## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

| | |
|---|---|
| LIGHTHOUSE FELLOWSHIP CHURCH,  ) | |
| ) | |
| Plaintiff,                    ) | |
| ) | |
| v.                            ) | Case No. _____ |
| ) | |
| RALPH NORTHAM, in his          ) | |
| official capacity as Governor of the  ) | |
| Commonwealth of Virginia,      ) | |
| ) | |
| Defendant.                ) | |

## VERIFIED COMPLAINT FOR DECLARATORY RELIEF, TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DAMAGES

For its Verified Complaint against Defendant, RALPH NORTHAM, in his official capacity as Governor of the Commonwealth of Virginia ("Governor Northam" or the "Commonwealth"), Plaintiff, LIGHTHOUSE FELLOWSHIP CHURCH ("Lighthouse"), alleges and avers as follows:

### URGENCIES JUSTIFYING TEMPORARY RESTRAINING ORDER

1.      In its Prayer for Relief, *infra*, and in the contemporaneously filed Motion for Temporary Restraining Order (TRO), Lighthouse seeks a TRO restraining enforcement against Lighthouse of the various COVID-19 orders issued by Governor Northam and other Commonwealth officials purporting to prohibit Lighthouse, on pain of criminal sanctions, from gathering at Lighthouse for worship services of more than 10 people, regardless of whether Lighthouse meets or exceeds the social distancing and hygiene guidelines pursuant to which the Commonwealth disparately and discriminatorily allows so-called "essential" commercial and non-religious entities (*e.g.*, beer, wine, and liquor stores, warehouse clubs, and 'big box' and

'supercenter' stores) to accommodate large crowds and masses of persons without scrutiny or numerical limit.

2.       As shown in the verified allegations below, Governor Northam's Executive Orders relating to COVID-19 have been interpreted, applied, and enforced, including against the pastor of Lighthouse, such that police officers in the Commonwealth of Virginia have visited Virginia churches, such as Lighthouse, threatened to impose, and in the case of Lighthouse, actually **imposed criminal sanctions against religious gatherings that included 16 people, only 6 more than Governor Northam's 10-person restriction, even though these 16 people were separated by more than six feet in the 225-seat sanctuary, far exceeding government social distancing and personal hygiene recommendations**.

3.       At around the same time as Governor Northam's Executive Orders surrounding COVID-19 were being used to impose criminal sanctions on Lighthouse's pastor, officials in other jurisdictions had similarly threatened to impose criminal sanctions on other religious gatherings. In Louisville, Kentucky, for example, the government threatened to use police to impose criminal sanctions on those individuals found in violation of similar COVID-19 orders and threatened to impose various sanctions on individuals found in violation of such orders. The United States District Court for the Western District of Kentucky found that the mere threat of such criminal sanction warranted a TRO. *See On Fire Christian Center, Inc. v. Fischer*, No. 3:20-cv-264-JRW, 2020 WL 1820249 (W.D. Ky. Apr. 11, 2020). The *On Fire* TRO enjoined the Mayor of Louisville from "**enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with any prohibition on drive-in church services at On Fire**." *Id.* at *1 (emphasis added).

4.       Yet, what the government in Louisville only threatened to do, Governor Northam and police officers in the Commonwealth of Virginia actually did to Lighthouse on April 5, 2020.

Pursuant to Governor Northam's Executive Order prohibiting the in-person gathering of more than 10 individuals, the Town of Chincoteague Police Department actually issued a criminal citation and summons to Pastor Kevin Wilson of Lighthouse ("Pastor Wilson") for the sole act of holding a church service in the Commonwealth of Virginia. In addition to that actually imposed criminal sanction, officials in the Commonwealth threatened to impose similar criminal sanctions on Lighthouse, its pastor, and each and every member and/or attendee who dared visit the Lighthouse Fellowship Church's service on Easter Sunday or any other worship service held while Governor Northam's orders are in effect.

5.      In fact, the Virginia State Police—acting under the direction of Governor Northam's orders—have publicly declared that they would enforce the Governor's orders and have threatened to impose criminal sanctions on those found in violation of them.

6.      Additionally, the Governor of Kansas had imposed a virtually identical restriction on religious gatherings in Kansas, stating that "gatherings" of more than 10 individuals are prohibited, including religious gatherings. On April 18, 2020, the United States District for the District of Kansas issued a TRO enjoining Kansas officials from enforcing its discriminatory prohibition on religious gatherings and required the government to treat "religious" worship services the same as other similar gatherings that are permitted. *See First Baptist Church. v. Kelly*, No. 20-1102-JWB, 2020 WL 1910021, *6–7 (D. Kan. Apr. 18, 2020) [hereinafter *First Baptist*]. The *First Baptist* TRO specifically stated that the government's disparate treatment of religious gatherings was a violation of the Free Exercise Clause because it showed that "**religious activities were specifically targeted for more onerous restrictions than comparable secular activities**," and that the churches had shown irreparable harm because they would "be prevented from gathering for worship at their churches" during the pendency of the executive order. *Id.* at *7–8 (emphasis added).

7.     In discussing the Kansas orders—which imposed a 10-person limit on in-person gatherings just as the Governor Northam orders here—the court said that specifically singling out religious gatherings for disparate treatment while permitting other non-religious activities "show[s] that these executive orders expressly target religious gatherings on a broad scale and are, therefore, not facially neutral," *First Baptist*, 2020 WL 1910021, at *7, and—much like here— "churches and religious activities appear to have been singled out among essential functions for stricter treatment. **It appears to be the only essential function whose core purpose—association for the purpose of worship—had been basically eliminated**." *Id.* (emphasis added). Thus, the court found that a TRO was necessary and that Kansas should be enjoined from enforcing its orders' disparate terms against churches. Indeed, "**it goes without saying that the government could not lawfully expressly prohibit individuals from meeting together for religious services**." *Id.* at *6 (emphasis added).

8.     Lighthouse's members were also threatened with criminal sanctions and penalties if, at any time, the number of individuals attending worship services at Lighthouse exceeded 10 individuals, and regardless of whether social distancing, enhanced sanitization, and personal hygiene practices were followed. Because of the government threat of criminal sanction, Lighthouse was forced not to host services on Easter Sunday, its most treasured day in Christianity.

9.     The Commonwealth has purported to direct all churches to host online services, drive-thru, drive-in, and/or parking lot services. Lighthouse is a small congregation without the resources or equipment to broadcast its worship services online or conduct parking lot or drive-in services. Moreover, even if Lighthouse had such capabilities, many of the members it serves are recovering drug addicts, former prostitutes, and others simply trying to put their lives together, who do not have the resources to watch worship services over the Internet. To those members, Lighthouse is their only family, and assembling with their church family is everything.

10.     Absent emergency relief from this Court, Lighthouse, its pastor, and all members and/or attendees will suffer immediate and irreparable injury from the threat of criminal prosecution for the mere act of engaging in the free exercise of religion and going to church. **Indeed, if Lighthouse, its pastor, or its members do not subscribe to what Governor Northam has prescribed as orthodox in a worship service, they risk becoming criminals in the Commonwealth.** A temporary restraining should issue.

## INTRODUCTION

11.     Due to the unprecedented nature of the 2019 novel coronavirus disease (COVID-19) and the indisputable health tragedy the disease has wrought on our great Republic and those victims suffering under its yoke, there are those who may find it "tempting to hold that First Amendment rights should acquiesce to national security in this instance." *Tobey v. Jones*, 706 F.3d 379, 393 (4th Cir. 2013). One could be forgiven for hastily reaching such a conclusion in such uncertain times, but "our Forefather Benjamin Franklin warned against such a temptation by opining that those who can give up essential liberty to obtain a little temporary safety, deserve neither liberty nor safety." *Id.*

12.     When the great American experiment was first implemented, our revered Founders took pains to note that the Constitution—and all of the rights it recognized and enshrined—was instituted "in order to form a more perfect Union, establish Justice, insure domestic Tranquility, provide for the common defense, promote the general Welfare, and **secure the Blessings of Liberty to ourselves and our Posterity**." U.S. Const. Pmbl. (emphasis added). To this very day, "we continue to strive toward '[that] more perfect union.'" *Smith v. City of New Smyrna Beach*, No. 6:110cv01110-Orl-37KRS, 2013 WL 5230659, *1 (M.D. Fla. Sept. 16, 2013). That work is not easy, and governments acting in good faith can and sometimes do miss the mark. This is such a case.

13.     Recognizing that times of crisis would arise, that such times might lead governments to seek to repress precious freedoms, and that the Republic's survival depended upon defeating such repressive instincts, the genius of our founding document is that it placed explicit protections into the text of the Bill of Rights. And, importantly, "[o]ur Bill of Rights placed our survival on firmer ground—that of freedom, not repression." *Konigsberg v. State Bar of California*, 366 U.S. 36, 79 (1961) (Black, J., dissenting).

14.     During times of national crisis, such as the current uncertainty arising from COVID-19, "the fog of public excitement obscures the ancient landmarks set up in our Bill of Rights." *American Communist Ass'n, C.I.O. v. Douds*, 339 U.S. 382, 453 (1950) (Black, J., dissenting). But, where the fog of public excitement is at its apex, "the more imperative is the need to preserve inviolate the constitutional rights of free speech, free press and free assembly." *De Jonge v. Oregon*, 299 U.S. 353, 365 (1937). Without doubt, "[t]herein lies the security of the Republic, the very foundation of constitutional government." *Id.*

15.     It is beyond cavil that our commitment to our founding principles is most tested and best calculated during times of crisis and uncertainty. Indeed, "[t]imes of crisis take the truest measure of our commitment to constitutional values. **Constitutional values are only as strong as our willingness to reaffirm them when they seem most costly to bear**." *Hartness v. Bush*, 919 F.2d 170, 181 (D.C. Cir. 1990) (Edwards, J., dissenting) (emphasis added). Our willingness to reaffirm our staunch commitment to our fundamental freedoms is imperative to the very survival of the American experiment. For, "[h]istory reveals that the initial steps in the erosion of individual rights are usually excused on the basis of an 'emergency' or threat to the public. **But the ultimate strength of our constitutional guarantees lies in the unhesitating application in times of crisis and tranquility alike**." *United States v. Bell*, 464 F.2d 667, 676 (2d Cir. 1972) (Mansfield, J., concurring) (emphasis added).

16.     Lighthouse brings this case to restrain the troubling transgression of its fundamental and cherished liberties wrought by the imposition of Governor Northam's orders surrounding COVID-19. Lighthouse seeks not to discredit or discard the government's unquestionable interest in doing that task for which it was instituted—protecting the citizenry. But, as is often true in times of crisis, Lighthouse respectfully submits that in an effort to uphold his sworn duties Governor Northam has stepped over a line the Constitution does not permit. Because of that, Lighthouse brings this action to ensure that this Court safeguards the cherished liberties for which so many have fought and died. For, "**[i]f the provisions of the Constitution be not upheld when they pinch as well as when they comfort, they may as well be discarded**." *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 483 (1934) (Sutherland, J., dissenting) (emphasis added). Lighthouse prays unto the Court that it not permit the cherished and fundamental liberties enshrined in the Constitution to be another tragic casualty of COVID-19.

## PARTIES

17.     Plaintiff, LIGHTHOUSE FELLOWSHIP CHURCH ("Lighthouse" or the "Church"), is a subsidiary of Living Hope Ministries of the Eastern Shore, Inc., a Maryland non-stock religious corporation incorporated under the laws of Maryland. Lighthouse's principle place of business is 6329 Maddox Blvd., Chincoteague Island, Virginia 23336.

18.     Defendant, RALPH NORTHAM, in his official capacity as Governor of the Commonwealth of Virginia  ("Governor Northam" or the "Commonwealth"), is responsible for enacting and enforcing the COVID-19 Executive Orders and other Orders at issue in this litigation. Governor Northam is sued in his official capacity.

## JURISDICTION AND VENUE

19.     This action arises under the First and Fourteenth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. § 1983. This action also arises under the

Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §2000cc, *et seq.* This action also arises under Article I, Sections 1, 7, 12, and 16 the Constitution of Virginia. This action also arises under the Virginia Act for Religious Freedom, Va. Code § 57-1, *et seq.*

20.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Lighthouse's claims occurred in this district.

22.     This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure, and is authorized to grant a temporary restraining order and injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

23.     This Court is authorized to grant Lighthouse's prayer for relief regarding costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988 and Va. Code § 57-2.02(D).

## GENERAL ALLEGATIONS

### A.     GOVERNOR NORTHAM'S EXECUTIVE ORDERS AND RELATED ORDERS FROM THE COMMONWEALTH OF VIRGINIA.

24.     On March 12, 2020, in response to COVID-19, Governor Northam issued Executive Order 51, which declared a state of emergency in the Commonwealth of Virginia. A true and correct copy of Executive Order 51 is attached hereto as **EXHIBIT A** and incorporated herein.

25.     In Executive Order 51, Governor Northam stated that COVID-19 represents "a communicable disease of public health threat" and directed various government agencies to implement certain restrictions and orders to facilitate the Commonwealth's response.

26.     On March 23, 2020, Governor Northam issued Executive Order 53 prohibiting "all public and private in person gatherings of more than 10 individuals." Executive Order 53 was subsequently amended on April 15, 2020. A true and correct copy of Executive Order 53 is attached hereto as **EXHIBIT B** and incorporated herein.

27.     In Executive Order 53, though purporting to prohibit "all public and private in person gatherings of more than 10 individuals," permits crowds and masses of persons to gather at certain businesses deemed "essential," including "[b]eer, wine, and liquor stores," "department stores," "[h]ome improvement, hardware, and building material" stores, and other designated "essential" businesses.

28.     Businesses deemed "essential" are permitted to continue operations subject to the requirement—but only "to the extent possible"—that they "adhere to social distancing recommendations, enhanced sanitizing practices on common surfaces," and other measures recommended by various government agencies.

29.     On March 30, 2020, Governor Northam issued Executive Order 55, which further expanded on the restrictions imposed in Executive Order 53, and purported to require all individuals in the Commonwealth to stay at home. A true and correct copy of Executive Order 55 is attached hereto as **EXHIBIT C** and incorporated herein.

30.     In Executive Order 55, Governor Northam stated that "[a]ll individuals in Virginia shall remain at their place of residence" except in the circumstances specifically permitted in the order.

31.     Executive Order 55 reiterated that "[a]ll public and private in-person gatherings of more than ten individuals are prohibited. This includes parties, celebrations, **religious**, or other social events." (Emphasis added.)

32.     Despite its **absolute** prohibitions on "religious" gatherings, Executive Order 55 permits all "essential" retail businesses to continue operating with **no limit** on the number of persons who may be physically present inside such businesses while following distancing and sanitizing practices (**if possible**), and permits all "non-essential" retail businesses to continue operating with no limit on the number of employees and other non-customer persons who may be physically present inside such businesses while following distancing and sanitizing practices (**if possible**).

33.     Executive Order 55 states that any violation of Governor Northam's executive orders constitutes a criminal offense subject to criminal penalties under the Code of Virginia.

34.     On April 1, 2020, pursuant to Executive Orders 53 and 55, the Virginia State Police issued a press release outlining its enforcement practices for the COVID-19 orders. A true and correct copy of the Virginia State Police April 1 News Release is attached hereto as **EXHIBIT D** and incorporated herein.

35.     In its release, the Virginia State Police confirmed the "[p]rohibition on all public and private in-person, indoor and outdoor gatherings of more than 10 individuals," and confirmed that violation of the Executive Orders from Governor Northam "can result in an individual(s) or business being charged with a class one misdemeanor, which carries up to a year in jail and $2,500 fine."

36.     On April 7, 2020, the Office of Diversity, Equity, and Inclusion in the Office of the Governor of Virginia issued a "Faith Communities Guidance Document," which purported to outline what is permissible for religious services. A true and correct copy of the Faith Communities Guidance Document is attached hereto as **EXHIBIT E** and incorporated herein.

37.     Despite the fact that Executive Order 55 permits businesses deemed "essential" to operate without limitation on the number of persons who may be physically present and businesses

deemed "non-essential" to operate without limitation on the number of employees and non-customer persons who may be physically present—even if it is not possible for such "essential" and "non-essential" businesses to comply with social distancing and sanitization guidelines—the Faith Communities Guidance Document confirms that Executive Order 55:

    a.   prohibits any in-person religious gatherings that include more than 10 people;

    b.   prohibits more than 10 employees or other persons to lead or support any "drive-in," "drive-through," or "parking lot" religious service, even if outside; and

    c.   dictates that sacramental and other religious practices "must be **strictly** limited" to avoid personal contact and observe social distancing (emphasis added).

38.    Lighthouse hereinafter refers to Executive Order 51, Executive Order 53, Executive Order 55, the Virginia State Police April 1 Enforcement Announcement, and the Governor's Faith Communities Guidance Document (EXHBITS A-E) collectively as the "GATHERING ORDERS."

**B.    THE COMMONWEALTH'S ENFORCEMENT OF GOVERNOR NORTHAM'S GATHERING ORDERS.**

39.    On April 5, 2020, Lighthouse held a worship service at its church property in Chincoteague Island, Virginia, with **16 individuals attending, only 6 people over Governor Northam's 10-person restrictio**n.

40.    Forty-five minutes prior to the service on April 5, 2020, and without any knowledge of how many individuals would attend such service at Lighthouse, a uniformed officer with the Town of Chincoteague Police Department entered Lighthouse's building to see whether Lighthouse was hosting a religious service.

41.     The police officer never requested to speak with the pastor or with any leadership of the church. Upon entering the building at Lighthouse, the officer merely demanded that there be no more than 10 people and that all must be spaced six feet apart.

42.     The officer spoke to a member of Lighthouse, Donald Morley, who is also a member of the Lighthouse Board of Directors.

43.     The officer exhibited hostility and unprofessionalism while speaking with Mr. Morley, demanding that he provide some sort of response to the officer's demands. The officer's unprovoked hostile and threatening statements included, "I don't like the way you're looking at me," and, "You don't want to open up this can of worms."

44.     Not understanding what the problem was at Lighthouse, Mr. Morley drove to the police headquarters for the Town of Chincoteague and asked to speak with the Chief of Police, R.K. Fisher.

45.     Mr. Morley was informed that Chief Fisher was not present, so Mr. Morley informed the police dispatcher on duty about what had occurred at Lighthouse that morning.

46.     After speaking with the dispatcher, Mr. Morley returned to Lighthouse for the worship service.

47.     At the conclusion of the April 5 worship service, two additional uniformed officers from the Town of Chincoteague Police Department arrived at Lighthouse and entered the building. Those officers entered the building in gloves and masks.

48.     Pastor Wilson spoke to the officers about their concerns, and immediately thereafter was given a criminal citation and summons by Patrolman First Class John R. Carmody of the Town of Chincoteague Police Department. A true and correct copy of Pastor Wilson's summons is attached hereto as **EXHIBIT F** and incorporated herein.

49.     The criminal citation and summons for Pastor Wilson charged him with violating Va. Code § 44-146.17, for violating Governor Northam's GATHERING ORDERS prohibiting religious gatherings. The statute makes it a Class 1 misdemeanor to violate an executive order that declares it has the full force and effect of law.

50.     Governor Northam's GATHERING ORDERS purport to declare that they have the full force and effect of law under the Code of Virginia.

51.     Pastor Wilson inquired of the Town of Chincoteague Police Department whether, if Lighthouse held a religious worship service on Easter Sunday, he would be further criminally cited, and PFC Carmody informed Pastor Wilson that should Lighthouse host an Easter Service with more than 10 people, **every person at the Easter Service would be given a criminal citation and summons**.

52.     PFC Carmody also informed Pastor Wilson that should Lighthouse host any further "religious" gatherings with more than 10 people, **every person at such a gathering or service would be given a criminal citation and summons**.

53.     Pastor Wilson's criminal prosecution is now pending in the General District Court for the County of Accomack in Virginia, Case No. GC20002594-00.

C.      **LIGHTHOUSE'S CHURCH SERVICES COMPLIED WITH SOCIAL DISTANCING AND PERSONAL HYGIENE RECOMMENDATIONS.**

54.     To comply with the CDC and other governmental social distancing and personal hygiene guidelines imposed by Governor Northam's GATHERING ORDERS (*i.e.*, "to the extent possible" for exempted businesses) for its April 5 Sunday worship service, Lighthouse executed stringent social distancing and personal hygiene protocols, including extensive and enhanced sanitizing of common surfaces in Lighthouse's building prior to the service, requiring attendees to

remain at least six feet apart and use hand sanitizer prior to entering and during movement inside Lighthouse's building.

55.     Lighthouse's church building has a total occupancy limit of 293 individuals by virtue of the government's fire inspection, and its sanctuary where its worship services are held typically seats approximately 225 persons.

56.     On April 5, the date Pastor Wilson was given a criminal citation and summons for violating Governor Northam's GATHERING ORDERS, **Lighthouse only had 16 individuals in attendance**, representing approximately thirteen percent (7%) of its seating capacity, and only five percent (5%) of the overall capacity.

57.     Lighthouse's social distancing, personal hygiene, and enhanced sanitizing practices complied with all of the recommended practices for "essential" and "non-essential" businesses that are permitted to continue to operate with more than 10 people present, and more than exceeded those of some businesses currently operating within the Commonwealth, and Lighthouse plans to continue such practices for all worship services held during the COVID-19 period.

> **D.     GOVERNOR NORTHAM'S UNEQUAL TREATMENT OF NON-RELIGIOUS GATHERINGS.**

58.     In publicly released photographs from Governor Northam's own thrice-weekly press conferences, even he does not abide by his 10-person limitation on "in-person" gatherings.



Associated Press, *Nation's Only Doctor Governor Offers Sober Voice on Virus* (April 9, 2020), *available at* https://wtop.com/virginia/2020/04/nations-only-doctor-governor-offers-sober-voice-on-virus/ (last visited April 21, 2020) (showing photograph of Governor Northam's press conference on April 8, 2020).

59.    Throughout the Commonwealth, as Lighthouse is prohibited from having "religious" gatherings, the parking lots of local businesses deemed "essential" contained numerous cars as shown below, and the cars' occupants were not engaging in the social distancing purportedly required of "drive-in" church services under the GATHERING ORDERS, but were nevertheless being permitted to enter such businesses without threat of (or actual) criminal sanction

like that imposed on Lighthouse's Pastor Wilson. One such example is from Lowe's, which is deemed essential under the GATHERING ORDERS, and at the time of visit had 162 cars in the parking lot:



(Declaration of Richard L. Mast ("Mast Declaration"), attached hereto as **EXHIBIT G, ¶**7).

60.    Likewise, as shown below, Walmart Supercenters and Target Stores, also deemed essential under the GATHERING ORDERS, are not abiding by the standards imposed on Lighthouse's "religious" gatherings, and the cars' occupants were not engaging in the social distancing purportedly required of "drive-in" church services under the GATHERING ORDERS,

but were nevertheless being permitted to enter such businesses without threat of (or actual) criminal sanction like that imposed on Lighthouse's Pastor Wilson:





(Mast Decl. ¶¶8-9 (noting that there were 268 cars in the WalMart parking lot at the time of his visit and 156 cars in the Target parking lot).

61.     Similarly, workers deemed "essential" under Governor Northam's GATHERING ORDERS have engaged in their regular operations without following the mandated social distancing protocols imposed on Lighthouse's in-person religious gathering.

62.     Additionally, at around the same time as Lighthouse's Pastor Wilson was being subjected to criminal penalties for his "religious" gathering of more than 10 people, local businesses deemed "essential" were permitted to accommodate customers that were not engaging in the same social distancing protocols that Lighthouse members and attendees followed during the April 5 church service.

### E.     LESS RESTRICTIVE ALTERNATIVES ARE AVAILABLE TO GOVERNOR NORTHAM.

63.     Despite Governor Northam's insistence that in-person religious gatherings of more than 10 people cannot continue because they would spread COVID-19, the Commonwealth has failed to consider other, substantially less restrictive alternatives to an absolute prohibition on "religious" gatherings.

64.     Like the Commonwealth of Virginia, the State of Florida has issued stay-at-home executive orders and required the closure of all so-called "non-essential" businesses without unnecessarily discriminating against religious gatherings. On April 1, 2020, Florida Governor Ron DeSantis issued Executive Order 20-91, which **included "religious services conducted in churches, synagogues, and houses of worship" as essential activities permitted to continue subject to social distancing and personal hygiene guidelines**. A true and correct copy of Florida Executive Order 20-91 is attached hereto as **EXHIBIT H** and incorporated herein.

65. The State of Indiana has likewise issued stay-at-home executive orders and required the closure of all so-called "non-essential" businesses without unnecessarily discriminating against religious gatherings. Governor Eric. J. Holcomb's Executive Order 20-08 declared that "[r]eligious facilities, entities and groups, and religious gatherings" are essential and may continue to operate provided they follow appropriate social distancing and personal hygiene practices. A true and correct copy of Indiana's Executive Order 20-08 is attached hereto as **EXHIBIT I** and incorporated herein.

66. The State of Arizona, in Executive Order 2020-18, classified religious services as essential and also permitted them to meet provided social distancing and personal hygiene practices were followed. A true and correct copy of Arizona Executive Order 2020-18 is attached hereto as **EXHIBIT J** and incorporated herein.

67. The State of Alabama, in its final Order of the State Health Officer Suspending Certain Public Gatherings Due to Risk of Infection by COVID-19, issued April 3, 2020, exempts individuals attending religious worship services in person subject to certain requirements and permits "drive-in" worship services without limitation. A true and correct copy of the Alabama Order is attached hereto as **EXHIBIT K** and incorporated herein.

68. The State of Arkansas has likewise exempted "places of worship" from its Executive Order 20-13 imposing restrictions to prevent the spread of COVID-19, provided that they engage in adequate social distancing and personal hygiene practices. A true and correct copy of the Arkansas Executive Order is attached hereto as **EXHIBIT L** and incorporated herein.

69. The State of Connecticut has similarly shown that other, less restrictive alternatives are available. In Executive Order No. 7N, Governor Ned Lamont permitted religious services to continue to meet, but limited their in-person gatherings to 50 people, as opposed to the six-person

limit applicable to other gatherings. A true and correct copy of the Connecticut Executive Order No. 7N is attached hereto as **EXHIBIT M** and incorporated herein.

70.     The State of Texas has likewise issued certain COVID-19 orders, but has provided explicit protections to religious gatherings and issued directives outlining the protection for religious freedom, even in these times of uncertainty. A true and correct copy of the Texas Guidance for Houses of Worship is attached hereto as **EXHIBIT N** and incorporated herein. In that Guidance, Texas notes that religious assemblies and houses of worship are "essential services" and that in-person gatherings are permissible if social distancing and personal hygiene practices are followed.

71.     Numerous other states have similarly permitted religious gatherings to be treated equally with non-religious gatherings.

72.     As these other states have demonstrated, Governor Northam can continue to pursue the Commonwealth's objective of preventing the spread of COVID-19 without unnecessarily treating religious gatherings in a discriminatory manner, and the Commonwealth has numerous other, less restrictive alternatives available to it to do so.

73.     **Governor Northam has neither tried without success nor considered and ruled out for good reason these less restrictive alternatives**.

74.     Governor Northam has constitutionally permissible alternatives available, but has failed to attempt to achieve the Commonwealth's purported goals without unnecessarily interfering with constitutionally protected activities.

F.     **IRREPARABLE INJURY TO LIGHTHOUSE FROM GOVERNOR NORTHAM'S GATHERING ORDERS.**

75.     Despite following all social distancing and personal hygiene protocols recommended by the CDC and specified in the GATHERING ORDERS, Lighthouse has been

explicitly targeted, singled out, and punished for participating in an in-person religious gathering when exempted commercial and non-religious entities may accommodate gatherings, crowds, and masses of people without numeric limitation, and without targeting or punishment by the government.

76.     As a result of Governor Northam's GATHERING ORDERS, Lighthouse has suffered and is suffering irreparable injury by having its Pastor criminally sanctioned and all attendees of future services threatened with similar criminal sanction.

77.     As a result of Governor Northam's GATHERING ORDERS, Lighthouse has suffered and is suffering irreparable injury by being prohibited from engaging in its constitutionally and statutorily protected rights of free exercise, assembly, and speech.

78.     As a result of Governor Northam's GATHERING ORDERS, Lighthouse has suffered and is suffering irreparable injury by the infringement of its constitutionally protected right to be free from government hostility toward religion.

79.     As a result of the Governor Northam's GATHERING ORDERS and the explicit threats from the Town of Chincoteague Police Department, Lighthouse has suffered and is suffering irreparable injury by the continuing threat of criminal sanctions Lighthouse's Pastor Wilson and members/attendees for merely exercising their constitutionally protected freedoms.

80.     Due to the explicit threats of Governor Northam's GATHERING ORDERS, the announcements by the Virginia State Police, and the statements of police officers in the Commonwealth of Virginia, Lighthouse has been forced to self-censor, cease its religious worship services, and violate its sincerely held religious beliefs.

**G.    LIGHTHOUSE'S ATTEMPTS TO SECURE RELIEF WITHOUT JUDICIAL INTERVENTION WERE IGNORED AND FURTHER ATTEMPTS TO NOTIFY THE COMMONWEALTH ARE FUTILE AND IMPRACTICAL BEFORE THIS SUNDAY.**

81.    On April 22, 2020, prior to the commencement of the instant action, Lighthouse's counsel sent by email a demand letter to Governor Northam, with copies to state and local police and other officials, in which Lighthouse's counsel demanded, by 5:00 P.M. on April 23, written confirmation that the Commonwealth has withdrawn the ban on religious gatherings over 10 people embodied in the GATHERING ORDERS, will allow individuals to attend church services at Lighthouse in an equal manner with other essential and non-essential business permitted to exceed 10-person gathering limitations provided certain social distancing and personal hygiene practices are followed, and will cease enforcement of any church gathering ban against members and/or attendees of Lighthouse church services. A true and correct copy of the demand letter is attached hereto as **EXHIBIT O**. No written response from Governor Northam's office was received by the requested deadline, or at any time prior to the filing of this Verified Complaint.

82.    The failure of Governor Northam or his officials to confirm withdrawal or cessation of enforcement of the discriminatory 10-person gathering ban for religious services in the GATHERING ORDERS and applied to Lighthouse and its pastor shows that Lighthouse's irreparable injury to its constitutionally protected freedoms is ongoing.

83.    The failure of Governor Northam or his officials to respond to Lighthouse's communication also shows that notice and an opportunity to respond to this lawsuit cannot be effectuated, and would be futile, prior to this Sunday's worship activities at Lighthouse, when the Commonwealth and/or other government officials will again interfere with the constitutional liberties of Lighthouse and its members absent a temporary restraining order from this Court.

## CONSTITUTIONAL CLAIMS

### COUNT I—THE GATHERING ORDERS VIOLATE
### PLAINTIFF'S RIGHT TO FREE EXERCISE OF RELIGION
### UNDER THE FIRST AMENDMENT

84.     Lighthouse hereby realleges and adopts each and every allegation in paragraphs 1–83 above.

85.     The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the Commonwealth from abridging Lighthouse's rights to free exercise of religion.

86.     Lighthouse has sincerely held religious beliefs that Scripture is the infallible, inerrant word of the Lord Jesus Christ, and that it is to follow its teachings.

87.     Lighthouse has sincerely held religious beliefs, rooted in Scripture's commands (*e.g.*, Hebrews 10:25), that followers of Jesus Christ are not to forsake the assembling of themselves together, and that they are to do so even more in times of peril and crisis. Indeed, the entire purpose of the Church (in Greek "ekklesia," meaning "assembly") is to assemble together Christians to worship Almighty God.

88.     The GATHERING ORDERS, on their face and as applied, target Lighthouse's sincerely held religious beliefs by prohibiting religious gatherings.

89.     The GATHERING ORDERS, on their face and as applied, impermissibly burden Lighthouse's sincerely held religious beliefs, compel Lighthouse to either change those beliefs or to act in contradiction to them, and force Lighthouse to choose between the teachings and requirements of its sincerely held religious beliefs in the commands of Scripture and the Commonwealth's imposed value system.

90.     The GATHERING ORDERS, on their face and as applied, place Lighthouse in an irresolvable conflict between compliance with the GATHERING ORDERS and its sincerely held religious beliefs.

91.     The GATHERING ORDERS, on their face and as applied, put substantial pressure on Lighthouse to violate its sincerely held religious beliefs by ignoring the fundamental teachings and tenets of Scripture concerning the assembling of Believers.

92.     The GATHERING ORDERS, on their face and as applied, are neither neutral nor generally applicable, but rather specifically and discriminatorily target the religious beliefs, speech, assembly, and viewpoint of Lighthouse.

93.     The GATHERING ORDERS, on their face and as applied, constitute a substantial burden on Lighthouse's sincerely held religious beliefs.

94.     The Commonwealth lacks a compelling, legitimate, or rational interest in the GATHERING ORDERS' application of different standards for churches and religious gatherings than those applicable to exempted businesses or non-religious entities.

95.     Even if the GATHERING ORDERS' restriction on religious gatherings were supported by a compelling interest, which it is not, they are not the least restrictive means to accomplish the government's purported interest.

96.     The GATHERING ORDERS, on their face and as applied, fail to accommodate Lighthouse's sincerely held religious beliefs.

97.     The GATHERING ORDERS, on their face and as applied, specifically target Lighthouse's sincerely held religious beliefs and set up a system of individualized exemptions that permits certain other similarly situated businesses or non-religious entities to continue operations under certain guidelines while prohibiting religious gatherings, such as Lighthouse's church and worship services, from operating with similar guidelines.

98.     The GATHERING ORDERS, on their face and as applied, constitute an express and overt religious gerrymander.

99.     The GATHERING ORDERS, on their face and as applied, have caused, are causing, and will continue to cause Lighthouse immediate and irreparable harm, and actual and undue hardship.

100.    Lighthouse has no adequate remedy at law to correct the continuing deprivation of its most cherished liberties.

WHEREFORE, Lighthouse respectfully prays for relief against the Commonwealth as hereinafter set forth in its prayer for relief.

### COUNT II—THE GATHERING ORDERS VIOLATE PLAINTIIFF'S RIGHT TO PEACEABLE ASSEMBLY UNDER THE FIRST AMENDMENT

101.    Lighthouse hereby realleges and adopts each and every allegation in paragraphs 1–83 above.

102.    The First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the Commonwealth from abridging the right of the people peaceably to assemble.

103.    The GATHERING ORDERS, on their face and as applied, are an unconstitutional prior restraint on Lighthouse's right to assemble.

104.    The GATHERING ORDERS, on their face and as applied, unconstitutionally discriminate on the basis of viewpoint.

105.    The GATHERING ORDERS, on their face and as applied, unconstitutionally discriminate on the basis of content.

106.     The Commonwealth lacks a compelling, legitimate, or rational interest in the GATHERING ORDERS' application of differential standards for churches and religious gatherings than those applicable to exempted businesses or non-religious entities.

107.     The GATHERING ORDERS, on their face and as applied, are not the least restrictive means to accomplish any permissible government purpose sought to be served by the orders.

108.     The GATHERING ORDERS, on their face and as applied, are not narrowly tailored to serve the government's purported interest.

109.     The GATHERING ORDERS, on their face and as applied, do not leave open ample alternative channels of communication for Lighthouse.

110.     The GATHERING ORDERS, on their face and as applied, are irrational and unreasonable and impose unjustifiable and unreasonable restrictions on Lighthouse's constitutionally protected right to assemble.

111.     The GATHERING ORDERS, on their face and as applied, impermissibly vest unbridled discretion in the hands of government officials, including Governor Northam and his designees, to apply or not apply the GATHERING ORDERS in a manner to restrict free assembly.

112.     The GATHERING ORDERS, on their face and as applied, are underinclusive by limiting their gathering prohibitions to only certain businesses or organizations deemed "non-essential."

113.     The GATHERING ORDERS, on their face and as applied, are unconstitutionally vague and overbroad as they chill and abridge the free assembly rights of Lighthouse.

114.     On their face and as applied, the GATHERING ORDERS' violation of Lighthouse's right to free assembly have caused, are causing, and will continue to cause Lighthouse to suffer immediate and irreparable injury and undue and actual hardship.

115.    Lighthouse has no other adequate remedy at law to correct the continuing deprivation of its most cherished liberties.

WHEREFORE, Lighthouse respectfully prays for the relief against the Commonwealth as hereinafter set forth in its prayer for relief.

## COUNT III - THE GATHERING ORDERS VIOLATE PLAINTIFF'S RIGHTS TO FREEDOM OF SPEECH UNDER THE FIRST AMENDMENT

116.    Lighthouse hereby realleges and adopts each and every allegation in paragraphs 1–83 above.

117.    The Free Speech Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the Commonwealth from abridging Lighthouse's freedom of speech.

118.    The GATHERING ORDERS, on their face and as applied, are an unconstitutional prior restraint on Lighthouse's speech.

119.    The GATHERING ORDERS, on their face and as applied, unconstitutionally discriminate on the basis of viewpoint.

120.    The GATHERING ORDERS, on their face and as applied, unconstitutionally discriminate on the basis of content.

121.    The Commonwealth lacks a compelling, legitimate, or rational interest in the GATHERING ORDERS' application of different standards for churches and religious gatherings than those applicable to exempted businesses and non-religious entities.

122.    The GATHERING ORDERS, on their face and as applied, are not the least restrictive means to accomplish any permissible government purpose sought to be served by the orders.

123.    The GATHERING ORDERS, on their face and as applied, are not narrowly tailored to serve the government's purported interest.

124.    The GATHERING ORDERS, on their face and as applied, do not leave open ample alternative channels of communication for Lighthouse.

125.    The GATHERING ORDERS, on their face and as applied, are irrational and unreasonable and impose unjustifiable and unreasonable restrictions on Lighthouse's constitutionally protected speech.

126.    The GATHERING ORDERS, on their face and as applied, impermissibly vest unbridled discretion in the hands of government officials, including Governor Northam and his designees, to apply or not apply the GATHERING ORDERS in a manner to restrict free speech.

127.    The GATHERING ORDERS, on their face and as applied, are underinclusive by limiting their prohibitions to only certain entities, organizations, or businesses deemed "non-essential."

128.    The GATHERING ORDERS, on their face and as applied, are unconstitutionally overbroad as they chill and abridge the free speech rights of Lighthouse.

129.    On their face and as applied, the GATHERING ORDERS' violation of Lighthouse's rights to free speech have caused, are causing, and will continue to cause Lighthouse to suffer immediate and irreparable injury and undue and actual hardship.

130.    Lighthouse has no other adequate remedy at law to correct the continuing deprivation of its most cherished liberties.

WHEREFORE, Lighthouse respectfully prays for the relief against the Commonwealth as hereinafter set forth in its prayer for relief.

## COUNT IV—THE GATHERING ORDERS VIOLATE
## THE ESTABLISHMENT CLAUSE OF THE FIRST AMENDMENT

131.    Lighthouse hereby realleges and adopts each and every allegation in paragraphs 1–83 above.

132.    The Establishment Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the government from establishing a religion.

133.    The Establishment Clause also prohibits excessive government entanglement with religion.

134.    The Establishment Clause also prohibits the government from showing hostility towards religion and prohibits showing favoritism towards one religious sect over another or between non-religion and religion.

135.    The 10-person government mandated limit in the GATHERING ORDERS imposed on religious gatherings in churches violates the Establishment Clause because the Commonwealth of Virginia thereby dictates the manner in which Christians and churches must worship with no more than 10 people or worship online, even when Lighthouse has no ability to broadcast worship online.

136.    The Establishment Clause does not permit the Commonwealth of Virginia to dictate under penalty of criminal sanctions the manner, style, form, practices, or sacraments of religious worship and thereby impose its own version of religious worship on every church and citizen of the Commonwealth.

137.    In fact, as the Supreme Court has unequivocally stated, "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, **religion**, or other matters of opinion or force citizens to confess

by word or act their faith threrein." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (emphasis added).

138.    The Commonwealth, through Governor Northam's GATHERING ORDERS, is purporting to prescribe what shall be orthodox in matters of religious worship, and is thus running roughshod over the Establishment Clause.

139.    The GATHERING ORDERS, on their face and as applied, permit the Commonwealth to display impermissible hostility towards religious gatherings.

140.    The GATHERING ORDERS, on their face and as applied, impermissibly show favoritism towards certain non-religious gatherings over religious gatherings.

141.    The GATHERING ORDERS, on their face and as applied, violate the Establishment Clause because they excessively entangle the government with religion.

142.    The GATHERING ORDERS, on their face and as applied, purport to inform religious adherents and believers how they may choose to worship, assemble together, or engage in their religious freedoms.

143.    The GATHERING ORDERS, on their face and as applied, purport to establish an acceptable method of religious practice and worship, place a numerical limitation on the scope of how such religious practice and worship may occur, and provide a government imprimatur for only certain forms of "permissible" worship.

144.    The GATHERING ORDERS, on their face and as applied, demonstrate overt hostility to religious practice and worship that does not conform to government sanctioned religious exercises.

145.    The GATHERING ORDERS, on their face and as applied, have caused, are causing, and will continue to cause Lighthouse immediate and irreparable harm, and actual and undue hardship.

146.     Lighthouse has no adequate remedy at law to correct the continuing deprivation of its most cherished constitutional liberties.

WHEREFORE, Lighthouse respectfully prays for the relief against the Commonwealth as hereinafter set forth in their prayer for relief.

**COUNT V—THE GATHERING ORDERS VIOLATE**
**PLAINTIFF'S RIGHT TO EQUAL PROTECTION**
**UNDER THE FOURTEENTH AMENDMENT**

147.     Lighthouse hereby realleges and adopts each and every allegation in paragraphs 1–83 above.

148.     The Fourteenth Amendment to the United States Constitution guarantees Lighthouse the right to equal protection under the law.

149.     The GATHERING ORDERS, on their face and as applied, are an unconstitutional abridgement of Lighthouse's right to equal protection under the law, are not neutral, and specifically target Lighthouse's and other religious gatherings for unequal treatment.

150.     The GATHERING ORDERS, on their face and as applied, are an unconstitutional abridgment of Lighthouse's right to equal protection because they permit the Commonwealth to treat Lighthouse differently from other similarly situated businesses and non-religious entities on the basis of the content and viewpoint of Lighthouse's gatherings.

151.     The GATHERING ORDERS, on their face and as applied, impermissibly discriminate between certain non-religious gatherings and religious gatherings.

152.     The Commonwealth lacks a compelling, legitimate, or rational interest in the GATHERING ORDERS' application of different standards for churches and religious gatherings than those applicable to exempted businesses or non-religious entities.

153.     The GATHERING ORDERS, on their face and as applied, are not the least restrictive means to accomplish any permissible government purpose sought to be served.

154.    The GATHERING ORDERS, on their face and as applied, do not have a rational basis.

155.    The GATHERING ORDERS, on their face and as applied, are irrational and unjustifiable and impose irrational and unjustifiable restrictions on Lighthouse's religious gatherings.

156.    The GATHERING ORDERS, on their face and as applied, have caused, are causing, and will continue to cause Lighthouse immediate and irreparable harm, and actual and undue hardship.

157.    Lighthouse has no adequate remedy at law to correct the continuing deprivation of its most cherished liberties.

WHEREFORE, Lighthouse respectfully prays for relief against the Commonwealth as hereinafter set forth in its prayer for relief.

### COUNT VI—THE GATHERING ORDERS VIOLATE
### PLAINTIFF'S RIGHT TO A REPUBLICAN FORM OF GOVERNMENT
### UNDER THE GUARANTEE CLAUSE OF ARTICLE IV, § 4 OF
### THE UNITED STATES CONSTITUTION

158.    Lighthouse hereby realleges and adopts each and every allegation in paragraphs 1–83 above.

159.    Article IV, § 4 of the United States Constitution requires the United States to guarantee to every citizen in the nation a republican form of government.

160.    The Guarantee Clause's distinguishing feature is that the republican form of government it guarantees is the right of the people to choose their own governmental administration and pass their own laws.

161.    As interpreted by the federal judiciary and prominent scholars, the Guarantee Clause mandates that the federal government guarantee a form of government for all citizens in

which supreme power resides in a body of citizens entitled to vote and exercised by elected officers responsible to such citizens.

162.     The GATHERING ORDERS' express, unilateral, and unequivocal exercises of purported executive authority over the constitutional rights of Lighthouse deprive Lighthouse of the right to select its own government administration, pass its own laws, and maintain a government administration directly responsible to the people, including by laws that are enacted by the legislature in constitutional recognition of the separation of powers.

163.     The impermissible exercise of exclusive and unaccountable executive authority violates the Guarantee Clause of the United States Constitution.

164.     The GATHERING ORDERS, on their face and as applied, have caused, are causing, and will continue to cause Lighthouse immediate and irreparable harm, and actual and undue hardship.

165.     Lighthouse has no adequate remedy at law to correct the continuing deprivation of its most cherished liberties.

WHEREFORE, Lighthouse respectfully prays for the relief against the Commonwealth as hereinafter set forth in its prayer for relief.

### COUNT VII—THE GATHERING ORDERS VIOLATE PLAINTIFF'S RIGHT TO FREE EXERCISE OF RELIGION UNDER ARTICLE I, SECTION 16 OF THE CONSTITUTION OF VIRGINIA

166.     Lighthouse hereby realleges and adopts each and every allegation in paragraphs 1–83 above.

167.     Article I, § 16 of the Constitution of Virginia states:

That religion or the duty which we owe to our Creator, and the manner of discharging it, can be directed only by reason and conviction, not by force or violence; and, therefore, all men are equally entitled to the free exercise of religion, according to the dictates of conscience; and that it is the mutual duty of all to practice Christian forbearance, love, and charity towards each other. No man shall be compelled to frequent or support any religious

worship, place, or ministry whatsoever, **nor shall be enforced, restrained, molested, or burthened in his body or goods, nor shall otherwise suffer on account of his religious opinions or belief**; but all men shall be free to profess and by argument to maintain their opinions in matters of religion, and the same shall in nowise diminish, enlarge, or affect their civil capacities. And the General Assembly shall not prescribe any religious test whatever, or confer any peculiar privileges or advantages on any sect or denomination, or pass any law requiring or authorizing any religious society, or the people of any district within this Commonwealth, to levy on themselves or others, any tax for the erection or repair of any house of public worship, or for the support of any church or ministry; but it shall be left free to every person to select his religious instructor, and to make for his support such private contract as he shall please.

(Emphasis added).

168.    Lighthouse has sincerely held religious beliefs that Scripture is the infallible, inerrant word of the Lord Jesus Christ, and that it is to follow its teachings.

169.    Lighthouse has sincerely held religious beliefs, rooted in Scripture's commands (*e.g.*, Hebrews 10:25), that followers of Jesus Christ are not to forsake the assembling of themselves together, and that they are to do so even more in times of peril and crisis. Indeed, the entire purpose of the Church (in Greek "ekklesia," meaning "assembly") is to assemble together Christians to worship Almighty God.

170.    The GATHERING ORDERS, on their face and as applied, target Lighthouse's sincerely held religious beliefs by prohibiting religious gatherings.

171.    The GATHERING ORDERS, on their face and as applied, impermissibly burden Lighthouse's sincerely held religious beliefs, compel Lighthouse to either change those beliefs or to act in contradiction to them, and force Lighthouse to choose between the teachings and requirements of its sincerely held religious beliefs in the commands of Scripture and the Commonwealth's imposed value system.

172.    The GATHERING ORDERS, on their face and as applied, place Lighthouse in an irresolvable conflict between compliance with the GATHERING ORDERS and its sincerely held religious beliefs.

173.    The GATHERING ORDERS, on their face and as applied, put substantial pressure on Lighthouse to violate its sincerely held religious beliefs by ignoring the fundamental teachings and tenets of Scripture concerning the assembling of Believers.

174.    The GATHERING ORDERS, on their face and as applied, are neither neutral nor generally applicable, but rather specifically and discriminatorily target the religious beliefs, speech, assembly, and viewpoint of Lighthouse.

175.    The GATHERING ORDERS, on their face and as applied, constitute a substantial burden on Lighthouse's sincerely held religious beliefs.

176.    The Commonwealth lacks a compelling, legitimate, or rational interest in the GATHERING ORDERS' application of different standards for churches and religious gatherings than those applicable to exempted businesses or non-religious entities.

177.    Even if the GATHERING ORDERS' restriction on religious gatherings were supported by a compelling interest, which it is not, they are not the least restrictive means to accomplish the government's purported interest.

178.    The GATHERING ORDERS, on their face and as applied, fail to accommodate Lighthouse's sincerely held religious beliefs.

179.    The GATHERING ORDERS, on their face and as applied, specifically target Lighthouse's sincerely held religious beliefs and set up a system of individualized exemptions that permits certain other similarly situated businesses or non-religious entities to continue operations under certain guidelines while prohibiting religious gatherings, such as Lighthouse's church and religious gatherings, from operating with similar guidelines.

180.    The GATHERING ORDERS, on their face and as applied, constitute an express and overt religious gerrymander.

181.    The GATHERING ORDERS, on their face and as applied, have caused, are causing, and will continue to cause Lighthouse immediate and irreparable harm, and actual and undue hardship.

182.    Lighthouse has no adequate remedy at law to correct the continuing deprivation of its most cherished liberties.

WHEREFORE, Lighthouse respectfully prays for relief against the Commonwealth as hereinafter set forth in its prayer for relief.

## COUNT VIII—THE GATHERING ORDERS VIOLATE
## PLAINTIFF'S RIGHT TO FREEDOM OF SPEECH AND ASSEMBLY
## UNDER ARTICLE I, SECTION 12 OF THE CONSTITUTION OF VIRGINIA

183.    Lighthouse hereby realleges and adopts each and every allegation in paragraphs 1–83 above.

184.    Article I, Section 12 of the Constitution of Virginia states:

**That the freedoms of speech and of the press are among the great bulwarks of liberty, and can never be restrained except by despotic governments**; that any citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right; that the General Assembly shall not pass any law abridging the freedom of speech or of the press, nor the right of the people peaceably to assemble, and to petition the government for the redress of grievances.

(Emphasis added).

185.    The GATHERING ORDERS, on their face and as applied, are an unconstitutional prior restraint on Lighthouse's speech and right to assembly.

186.    The GATHERING ORDERS, on their face and as applied, unconstitutionally discriminate on the basis of viewpoint.

187.    The GATHERING ORDERS, on their face and as applied, unconstitutionally discriminate on the basis of content.

188.    The Commonwealth lacks a compelling, legitimate, or rational interest in the GATHERING ORDERS' application of different standards for churches and religious gatherings than those applicable to exempted businesses and non-religious entities.

189.    The GATHERING ORDERS, on their face and as applied, are not the least restrictive means to accomplish any permissible government purpose sought to be served by the orders.

190.    The GATHERING ORDERS, on their face and as applied, are not narrowly tailored to serve the government's purported interest.

191.    The GATHERING ORDERS, on their face and as applied, do not leave open ample alternative channels of communication for Lighthouse.

192.    The GATHERING ORDERS, on their face and as applied, are irrational and unreasonable and impose unjustifiable and unreasonable restrictions on Lighthouse's constitutionally protected speech and right to assemble.

193.    The GATHERING ORDERS, on their face and as applied, impermissibly vest unbridled discretion in the hands of government officials, including Governor Northam and his designees, to apply or not apply the GATHERING ORDERS in a manner to restrict free speech and assembly.

194.    The GATHERING ORDERS, on their face and as applied, are underinclusive by limiting their prohibitions to only certain entities, organizations, or businesses deemed "non-essential."

195.    The GATHERING ORDERS, on their face and as applied, are unconstitutionally overbroad as they chill and abridge the free speech and assembly rights of Lighthouse.

196.     On their face and as applied, the GATHERING ORDERS' violation of Lighthouse's rights to free speech and assembly have caused, are causing, and will continue to cause Lighthouse to suffer immediate and irreparable injury and undue and actual hardship.

197.     Lighthouse has no other adequate remedy at law to correct the continuing deprivation of its most cherished liberties.

WHEREFORE, Lighthouse respectfully prays for the relief against the Commonwealth as hereinafter set forth in its prayer for relief.

### COUNT IX—THE GATHERING ORDERS VIOLATE PLAINTIFF'S RIGHT TO HAVE LAWS SUSPENDED ONLY BY THE VIRGINIA GENERAL ASSEMBLY

198.     Lighthouse hereby realleges and adopts each and every allegation in paragraphs 1–83 above.

199.     Article I, Section 7 of the Constitution of Virginia states "[t]hat all power of suspending laws, or the execution of laws, by any authority, without consent of the representatives of the people, is injurious to their rights, and ought not to be exercised."

200.     The GATHERING ORDERS' express, unilateral, and unequivocal exercise of purported executive authority over the constitutional rights of Lighthouse deprive Lighthouse of the right to select its own government administration, pass its own laws, and maintain a government administration directly responsible to the people, including by laws that are enacted by the legislature.

201.     The impermissible exercise of such executive authority violated the Constitution of Virginia by purporting to suspend constitutional rights and laws of the Commonwealth without legislative exercise of such suspension.

202.    The GATHERING ORDERS, on their face and as applied, have caused, are causing, and will continue to cause Lighthouse immediate and irreparable harm, and actual and undue hardship.

203.    Lighthouse has no adequate remedy at law to correct the continuing deprivation of its most cherished liberties.

WHEREFORE, Lighthouse respectfully prays for the relief against the Commonwealth as hereinafter set forth in its prayer for relief.

## STATUTORY CLAIMS

## COUNT X—THE GATHERING ORDERS VIOLATE PLAINTIFF'S RIGHTS UNDER THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT

204.    Lighthouse hereby realleges and adopts each and every allegation in paragraphs 1–83 above.

205.    The Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc–2000cc-5 ("RLUIPA"), states that "[n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution." 42 U.S.C. § 2000cc(a)(1). If the government does impose such a restriction, it must then demonstrate that such a burden on the religious assembly is supported by a compelling interest and is the least restrictive means to further that alleged interest.

206.    RLUIPA further mandates that no government "impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1).

207.    RLUIPA further states that "[n]o government shall impose or implement a land use regulation that (A) totally excludes religious assemblies from a jurisdiction; or (B) unreasonably

limits religious assemblies, institutions, or structures within a jurisdiction." 42 U.S.C. § 2000cc(b)(3).

208.    Lighthouse has sincerely held religious beliefs that Scripture is the infallible, inerrant word of the Lord Jesus Christ, and that Lighthouse is to follow its teachings.

209.    Lighthouse has sincerely held religious beliefs, rooted in Scripture's commands (*e.g.*, Hebrews 10:25), that followers of Jesus Christ are not to forsake the assembling of themselves together, and that they are to do so even more in times of peril and crisis. Indeed, the entire purpose of the Church (in Greek "ekklesia," meaning "assembly") is to assemble together Christians to worship Almighty God.

210.    The GATHERING ORDERS, on their face and as applied, target Lighthouse's sincerely held religious beliefs by prohibiting religious gatherings.

211.    The GATHERING ORDERS, on their face and as applied, impermissibly and substantially burden Lighthouse's sincerely held religious beliefs, compel Lighthouse to either change those beliefs or to act in contradiction to them, and force Lighthouse to choose between the teachings and requirements of its sincerely held religious beliefs in the commands of Scripture and the Commonwealth's imposed value system.

212.    The GATHERING ORDERS, on their face and as applied, constitute a substantial burden on Lighthouse's sincerely held religious beliefs.

213.    The Commonwealth lacks a compelling interest in the GATHERING ORDERS' application of different standards for churches and religious gatherings than those applicable to exempted businesses and non-religious entities.

214.    Even if the GATHERING ORDERS' restrictions on religious gatherings was supported by a compelling interest, which it is not, they are not the least restrictive means to accomplish the government's purported interest.

215.    The GATHERING ORDERS, on their face and as applied, have caused, are causing, and will continue to cause Lighthouse immediate and irreparable harm, and actual and undue hardship.

216.    Lighthouse has no adequate remedy at law to correct the continuing deprivation of its most cherished liberties.

WHEREFORE, Lighthouse respectfully prays for relief against the Commonwealth as hereinafter set forth in its prayer for relief.

### COUNT XI—THE GATHERING ORDERS VIOLATE
### PLAINTIIFF'S RIGHTS UNDER
### THE VIRGINIA ACT FOR RELIGIOUS FREEDOM

217.    Lighthouse hereby realleges and adopts each and every allegation in paragraphs 1–83 above.

218.    The Virginia Act for Religious Freedom, Va. Code. § 57-1, *et seq.*, provides, in pertinent part:

> **Whereas, Almighty God hath created the mind free; that all attempts to influence it by temporal punishment, or burthens, or by civil incapacitations, tend only to beget habits of hypocrisy and meanness, and are a departure from the plan of the Holy Author of our religion**, who, being Lord both of body and mind, yet chose not to propagate it by coercions on either, as was in his Almighty power to do; that the impious presumption of legislators and rulers, civil as well as ecclesiastical, who, being themselves but fallible and uninspired men, have assumed dominion over the faith of others, setting up their own opinions and modes of thinking as the only true and infallible, and as such endeavoring to impose them on others, have established and maintained false religions over the greatest part of the world, and through all time; that to compel a man to furnish contributions of money for the propagation of opinions which he disbelieves, is sinful and tyrannical, and even the forcing him to support this or that teacher of his own religious persuasion, is depriving him of the comfortable liberty of giving his contributions to the particular pastor whose morals he would make his pattern, and whose powers he feels most persuasive to righteousness, and is withdrawing from the ministry those temporary rewards which, proceeding from an approbation of their personal conduct, are an additional incitement to earnest and unremitting labors, for the instruction of mankind; that our civil rights have no dependence on our religious opinions any more than our opinions in physics or geometry; that therefore the proscribing any citizen as unworthy the public confidence by laying

upon him an incapacity of being called to offices of trust and emolument, unless he profess or renounce this or that religious opinion, is depriving him injuriously of those privileges and advantages to which, in common with his fellow citizens, he has a natural right; that it tends only to corrupt the principles of that religion it is meant to encourage, by bribing, with a monopoly of worldly honors and emoluments, those who will externally profess and conform to it; that though, indeed, those are criminal who do not withstand such temptation, yet, neither are those innocent who lay the bait in their way; that to suffer the civil magistrate to intrude his powers into the field of opinion, and to restrain the profession or propagation of principles on supposition of their ill tendency, is a dangerous fallacy, which at once destroys all religious liberty, because he, being of course judge of that tendency, will make his opinions the rules of judgment, and approve or condemn the sentiments of others only as they shall square with or differ from his own; that it is time enough for the rightful purposes of civil government, for its officers to interfere, when principles break out into overt acts against peace and good order; and finally, that truth is great and will prevail, if left to herself; that she is the proper and sufficient antagonist to error, and has nothing to fear from the conflict, unless by human interposition disarmed of her natural weapons, free argument and debate; errors ceasing to be dangerous when it is permitted freely to contradict them

Be it enacted by the General Assembly, That no man shall be compelled to frequent or support any religious worship, place or ministry whatsoever, **nor shall be enforced, restrained, molested or burthened, in his body or goods, nor shall otherwise suffer on account of his religious opinions or belief; but that all men shall be free to profess, and by argument to maintain, their opinions in matters of religion**, and that the same shall in no wise diminish, enlarge or affect their civil capacities.

And though we well know that this Assembly, elected by the people for the ordinary purposes of legislation only, have no power to restrain the acts of succeeding assemblies constituted with powers equal to our own, and that, therefore, to declare this act to be irrevocable would be of no effect in law; yet we are free to declare, and do declare, that the rights hereby asserted are of the natural rights of mankind; and that if any act shall be hereafter passed to repeal the present, or to narrow its operation, such act will be an infringement of natural right.

Va. Code. § 57-1 (emphasis added) (internal quotation marks omitted).

219.    Virginia's Act for Religious Freedom also states:

No government entity shall substantially burden a person's free exercise of religion even if the burden results from a rule of general applicability unless it demonstrates that application of the burden to the person is (i) essential to further a compelling governmental interest and (ii) the least restrictive means of furthering that compelling governmental interest.

Va. Code § 57-2.02(B).

220.    Lighthouse has sincerely held religious beliefs that Scripture is the infallible, inerrant word of the Lord Jesus Christ, and that it is to follow its teachings.

221.    Lighthouse has sincerely held religious beliefs, rooted in Scripture's commands (*e.g.*, Hebrews 10:25), that followers of Jesus Christ are not to forsake the assembling of themselves together, and that they are to do so even more in times of peril and crisis. Indeed, the entire purpose of the Church (in Greek "ekklesia," meaning "assembly") is to assemble together Christians to worship Almighty God.

222.    The GATHERING ORDERS, on their face and as applied, target Lighthouse's sincerely held religious beliefs by prohibiting religious gatherings.

223.    The GATHERING ORDERS, on their face and as applied, impermissibly burden Lighthouse's sincerely held religious beliefs, compel Lighthouse to either change those beliefs or to act in contradiction to them, and force Lighthouse to choose between the teachings and requirements of its sincerely held religious beliefs in the commands of Scripture and the Commonwealth's imposed value system.

224.    The GATHERING ORDERS, on their face and as applied, place Lighthouse in an irresolvable conflict between compliance with the GATHERING ORDERS and its sincerely held religious beliefs.

225.    The GATHERING ORDERS, on their face and as applied, put substantial pressure on Lighthouse to violate its sincerely held religious beliefs by ignoring the fundamental teachings and tenets of Scripture concerning the assembling of Believers.

226.    The GATHERING ORDERS, on their face and as applied, are neither neutral nor generally applicable, but rather specifically and discriminatorily target the religious beliefs, speech, assembly, and viewpoint of Lighthouse.

227.    The GATHERING ORDERS, on their face and as applied, constitute a substantial burden on Lighthouse's sincerely held religious beliefs.

228.    The Commonwealth lacks a compelling, legitimate, or rational interest in the GATHERING ORDERS' application of different standards for churches and religious gatherings than those applicable to exempted businesses or non-religious entities.

229.    Even if the GATHERING ORDERS' restriction on religious gatherings were supported by a compelling interest, which it is not, they are not the least restrictive means to accomplish the government's purported interest.

230.    The GATHERING ORDERS, on their face and as applied, fail to accommodate Lighthouse's sincerely held religious beliefs.

231.    The GATHERING ORDERS, on their face and as applied, specifically target Lighthouse's sincerely held religious beliefs and set up a system of individualized exemptions that permits certain other similarly situated businesses or non-religious entities to continue operations under certain guidelines while prohibiting religious gatherings, such as Lighthouse's church and religious gatherings, from operating with similar guidelines.

232.    The GATHERING ORDERS, on their face and as applied, constitute an express and overt religious gerrymander.

233.    The GATHERING ORDERS, on their face and as applied, have caused, are causing, and will continue to cause Lighthouse immediate and irreparable harm, and actual and undue hardship.

234.    Lighthouse has no adequate remedy at law to correct the continuing deprivation of its most cherished liberties.

WHEREFORE, Lighthouse respectfully prays for relief against the Commonwealth as hereinafter set forth in its prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Lighthouse prays for relief as follows:

A.      That the Court issue a Temporary Restraining Order restraining and enjoining Governor Northam, all Commonwealth officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with the GATHERING ORDERS or any other order to the extent any such order prohibits religious worship services at Lighthouse, or in-person church services at Lighthouse if Lighthouse meets the social distancing, enhanced sanitization, and personal hygiene guidelines pursuant to which the Commonwealth allows so-called "essential" commercial and non-religious entities (*e.g.*, beer, wine, and liquor stores, warehouse clubs, 'big box' and 'supercenter' stores) to accommodate gatherings of persons without numerical limit. **To be clear, Lighthouse merely seeks a TRO preventing Lighthouse, its pastor, and its members from being subject to criminal sanctions for having more than 10 people at its worship service on Sunday**. In making such a request, Lighthouse merely seeks to be treat equally with other businesses, and seeks only to be permitted to meet without the 10-person limit so long as they abide by social distancing, enhanced sanitizing, and personal hygiene recommendations that other businesses are allowed to follow and remain open.

B.      That the Court issue a Preliminary Injunction pending trial, and a Permanent Injunction upon judgment, restraining and enjoining Governor Northam, all Commonwealth officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing the GATHERING ORDERS so that:

        i.      The Commonwealth will not apply the GATHERING ORDERS in any manner as to infringe Lighthouse's constitutional and statutory rights by discriminating against their right to assembly, speech, free exercise of

Case 2:20-cv-00204-AWA-RJK   Document 1   Filed 04/24/20   Page 46 of 50 PageID# 46

religion, equal protection, and all other constitutional and statutory rights outlined herein;

ii.     The Commonwealth will apply the GATHERING ORDERS in a manner that treats Lighthouse's religious gatherings on equal terms as gatherings for or in so-called "essential" businesses and non-religious entities;

iii.    The Commonwealth will permit religious gatherings so long as they comply with the same social distancing and personal hygiene recommendations pursuant to which the Commonwealth allows so-called "essential" commercial and non-religious entities (*e.g.*, beer, wine, and liquor stores, warehouse clubs, and supercenters) to accommodate gatherings of persons without numerical limit under the GATHERING ORDERS;

iv.     The Commonwealth will permit Lighthouse the opportunity to comport their behavior to any further limitations or restrictions that the Commonwealth may impose in any future modification, revision, or amendment of the GATHERING ORDERS or similar legal directive;

v.      The Commonwealth will cease issuing notices of criminal violation to Lighthouse's Pastor, members, and/or attendees; and

vii.    The Commonwealth will not bring any further enforcement, criminal, or other public health actions against Lighthouse as threatened in Governor Northam's public statements and citations issued to Pastor Wilson.

C.      That the Court render a Declaratory Judgment declaring that the GATHERING ORDERS both on their face and as applied by the Commonwealth are unconstitutional under the United States Constitution and Constitution of Virginia, and further declaring that:

i.      The Commonwealth has violated Lighthouse's rights to freedom of assembly by impermissibly prohibiting religious gatherings;

ii.     The Commonwealth has violated Lighthouse's rights to freedom of speech by impermissibly prohibiting religious gatherings;

iii.    The Commonwealth has violated Lighthouse's rights to free exercise of religion by impermissibly prohibiting religious gatherings, substantially burdening their sincerely held religious beliefs, applying criteria that are neither neutral nor generally applicable to religious and non-religious gatherings, by establishing a religious gerrymander against religious gatherings, and by establishing a system of individualized exemptions that exclude similarly situated non-religious gatherings from the prohibitions applicable to Lighthouse's religious gatherings;

iv.     The Commonwealth has violated Lighthouses' rights to equal protection of the laws by impermissibly prohibiting religious gatherings, and by applying criteria that treats religious gatherings in a discriminatory and dissimilar manner as that applied to various non-religious gatherings;

v.      The Commonwealth has violated the Establishment Clause by impermissibly demonstrating hostility towards religious gatherings and by impermissibly showing favoritism to certain non-religious gatherings;

vi.     The Commonwealth has violated the Guarantee Clause by impermissibly exercising executive authority in an unconstitutional manner;

vii.    The Commonwealth has violated the Religious Land Use and Institutionalized Persons Act by substantially and impermissibly burdening Lighthouse's sincerely held religious beliefs and treating unequally as

47

compared to other non-religious assemblies or institutions, by imposing draconian prohibitions on Lighthouse's sincerely held religious beliefs without a compelling government interest, and without deploying the least restrictive means to achieve any permissible government interest; and

viii.  The Commonwealth has violated the Virginia Act for Religious Freedom by substantially and impermissibly burdening Lighthouse's sincerely held religious beliefs and treating them unequally as compared to other non-religious assemblies or institutions, by imposing draconian prohibitions on Lighthouse's sincerely held religious beliefs without a compelling government interest, without deploying the least restrictive means to achieve any permissible government interest, and without providing clear and convincing evidence that its GATHERING ORDERS are supported by a compelling government interest and deploy the least restrictive means.

D.     That the Court award Lighthouse nominal damages for the violation of Lighthouse's constitutional rights.

E.     That the Court adjudge, decree, and declare the rights and other legal relations within the subject matter here in controversy so that such declaration shall have the full force and effect of final judgment.

F.     That the Court retain jurisdiction over the matter for the purposes of enforcing the Court's order.

G.     That the Court declare Lighthouse is prevailing parties and award Lighthouse the reasonable costs and expenses of this action, including a reasonable attorney's fee, in accordance with 42 U.S.C. § 1988 and Va. Code § 57-2.02(D).

H.     That the Court grant such other and further relief as the Court deems equitable and

just under the circumstances.

Respectfully submitted,

/s/ Daniel J. Schmid
Mathew D. Staver*
Horatio G. Mihet*
Roger K. Gannam*
Daniel J. Schmid
     VA Bar No. 84415
**Attorneys for Plaintiff**
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Facsimile: (407) 875-0770
Email: court@lc.org
     hmihet@lc.org
     rgannam@lc.org
     dschmid@lc.org

*Pro hac vice applications pending

## **VERIFICATION**

I, Kevin Wilson, am over the age of eighteen years and the Pastor of Lighthouse Fellowship Church, the Plaintiff in this action. The statements and allegations that pertain to me and/or Plaintiff Lighthouse Fellowship Church or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the Commonwealth of Virginia, that the foregoing statements are true and correct to the best of my knowledge.

Dated: April 24, 2020

/s/ Kevin Wilson
Kevin Wilson