## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

| | |
|---|---|
| LIGHTHOUSE FELLOWSHIP CHURCH, <br><br> *Plaintiff,* <br><br> v. <br><br> RALPH NORTHAM, *in his official capacity as Governor of the Commonwealth of Virginia,* <br><br> *Defendant.* | Case No. 2:20-cv-204 |

---

**BRIEF OF AMERICANS UNITED FOR SEPARATION OF CHURCH AND STATE AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR INJUNCTION PENDING APPEAL**

---

RICHARD B. KATSKEE*
ALEX J. LUCHENITSER*
    Americans United for Separation of
      Church and State
    1310 L Street NW, Suite 200
    Washington, DC 20005
    (202) 466-3234
    (202) 466-3353 (fax)
    luchenitser@au.org

VICTOR M. GLASBERG
    VSB No. 16184
    Attorney for Amicus Curiae
    Victor M. Glasberg & Associates
    121 S. Columbus Street
    Alexandria, VA 22314
    (703) 684-1100
    (703) 684-1104 (fax)
    vmg@robinhoodesq.com

* Pro hac vice motions submitted herewith.

**TABLE OF CONTENTS**

Page(s)

Table of Authorities ........................................................................................................ ii

Identity and Interests of *Amicus Curiae* ........................................................................ 1

Introduction and Summary of Argument ......................................................................... 1

Argument .......................................................................................................................... 4

I.      The Order Does Not Violate The Free Exercise Clause ......................................... 4

        A.      The Order is Subject to Rational-Basis Review ......................................... 4

                1.      The order is neutral toward religion ................................................ 5

                2.      The order is generally applicable .................................................... 5

        B.      The Order Would Satisfy Even A Compelling-Interest Test ....................... 8

                1.      The order serves a compelling governmental interest ..................... 8

                2.      The order is narrowly tailored ....................................................... 10

II.     The Order Does Not Violate The Free Speech Or Assembly Clauses ................. 11

III.    The Order Does Not Violate The Establishment Clause, But Granting A Religious
        Exemption Would ................................................................................................. 13

Conclusion ...................................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abiding Place Ministries v. Wooten*,
No. 3:20-cv-00683-BAS-AHG, ECF No. 7 (S.D. Cal. Apr. 10, 2020) ...................................3

*American Life League, Inc. v. Reno*,
47 F.3d 642 (4th Cir. 1995) ................................................................................................5

*Binford v. Sununu*,
No. 217-2020-CV-00152 (N.H. Super. Ct. Mar. 25, 2020).......................................................3

*Boos v. Barry*,
485 U.S. 312 (1988).......................................................................................................12

*Braunfeld v. Brown*,
366 U.S. 599 (1961).......................................................................................................14

*Cantwell v. Connecticut*,
310 U.S. 296 (1940).........................................................................................................4

*Cassell v. Snyders*, __ F. Supp. 3d __,
No. 20 C 50153, 2020 WL 2112374 (N.D. Ill. May 3, 2020),
*appeal docketed*, No. 20-1757 (7th Cir. May 6, 2020)..............................................................3

*Church of the Lukumi Babalu Aye v. City of Hialeah*,
508 U.S. 520 (1993)..................................................................................................2, 4, 5, 6

*City Council v. Taxpayers for Vincent*,
466 U.S. 789 (1984)......................................................................................................12

*City of Dallas v. Stanglin*,
490 U.S. 19 (1989)........................................................................................................12

*Clark v. Community for Creative Non-Violence*,
468 U.S. 288 (1984)......................................................................................................12

*Compagnie Francaise de Navigation*
*a Vapeur v. Louisiana Board of Health*,
186 U.S. 380 (1902)........................................................................................................9

*Corp. of the Presiding Bishop of the Church of*
*Jesus Christ of Latter-day Saints v. Amos*,
483 U.S. 327 (1987)......................................................................................................15

*Cross Culture Christian Ctr. v. Newsom,*
 __ F. Supp. 3d __, No. 2:20-cv-832-JAM-CKD,
 2020 WL 2121111 (E.D. Cal. May 5, 2020) ........................................................3

*Cutter v. Wilkinson,*
 544 U.S. 709 (2005)..............................................................................14, 15

*Davis v. Berke,*
 No. 1:20-cv-98, 2020 WL 1970712 (E.D. Tenn. Apr. 17, 2020) ............................3

*Employment Division v. Smith,*
 494 U.S. 872 (1990)..............................................................................1, 4, 8, 14

*Epperson v. Arkansas,*
 393 U.S. 97 (1968)................................................................................13

*Estate of Thornton v. Caldor, Inc.,*
 472 U.S. 703 (1985)..............................................................................2, 13, 15

*Frisby v. Schultz,*
 487 U.S. 474 (1988)..............................................................................10

*Giboney v. Empire Storage & Ice Co.,*
 336 U.S. 490 (1949)..............................................................................11

*Gish v. Newsom,*
 No. 5:20-cv-755, 2020 WL 1979970 (C.D. Cal. Apr. 23, 2020),
 *appeal docketed,* No. 20-55445 (9th Cir. Apr. 28, 2020) .....................................3

*Globe Newspaper Co. v. Superior Court,*
 457 U.S. 596 (1982)..............................................................................10

*Grutter v. Bollinger,*
 539 U.S. 306 (2003)..............................................................................8

*Hannibal & St. Joseph R.R. Co. v. Husen,*
 95 U.S. 465 (1877)................................................................................9

*Holder v. Humanitarian Law Project,*
 561 U.S. 1 (2010)..................................................................................11, 12

*Hosanna-Tabor Lutheran Evangelical
 Church & School v. EEOC,*
 565 U.S. 171 (2012)..............................................................................15

*Hotze v. Hidalgo,*
 No. 2020-22609 (Tex. Dist. Ct. Apr. 13, 2020)...................................................3

*Hughes v. Northam,*
 No. CL 20-415 (Va. Cir. Ct. Russell Cty. Apr. 14, 2020) .....................................3

*Jacobson v. Massachusetts,*
 197 U.S. 11 (1905)..............................................................................9, 10, 14

*Legacy Church, Inc. v. Kunkel*,
__ F. Supp. 3d __, No. 1:20-cv-327-JB-SCY,
2020 WL 1905586 (D.N.M. Apr. 17, 2020) .......................................................3, 7

*Maryville Baptist Church, Inc. v. Beshear*,
__ F.3d __, No. 20-5427, 2020 WL 2111316 (6th Cir. May 2, 2020)....................3, 4

*McCormick v. Stalder*,
105 F.3d 1059 (4th Cir. 1997) .......................................................................9

*McCreary County v. ACLU of Kentucky*,
545 U.S. 844 (2005)....................................................................................13

*Nigen v. New York*,
No. 1:20-cv-01576-EK-PK,
2020 WL 1950775 (E.D.N.Y. Mar. 29, 2020) ..............................................3

*Pennhurst State School & Hospital v. Halderman*,
465 U.S. 89 (1984)........................................................................................8

*Prince v. Massachusetts*,
321 U.S. 158 (1944).........................................................................4, 9, 14

*Real Alternatives, Inc. v. Secretary Department*
*of Health & Human Services*,
867 F.3d 338 (3d Cir. 2017)........................................................................15

*Reynolds v. United States*,
98 U.S. 145 (1879)........................................................................................4

*Roberts v. Neace*,
__ F. Supp. 3d __, No. 2:20-cv-054, 2020 WL 2115358
(E.D. Ky. May 4, 2020), *appeal docketed*, No. 20-5465 (6th Cir. May 5, 2020)....................3

*Roberts v. U.S. Jaycees*,
468 U.S. 609 (1984)................................................................................10, 12

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
547 U.S. 47 (2006)........................................................................................11

*Sherbert v. Verner*,
374 U.S. 398 (1963).........................................................................8, 9, 10

*Stormans, Inc. v. Selecky*,
586 F.3d 1109 (9th Cir. 2009) .......................................................................7

*Texas Monthly, Inc. v. Bullock*,
489 U.S. 1 (1989)........................................................................................14

*Thomas v. Collins*,
323 U.S. 516 (1945)....................................................................................11

*Tolle v. Northam*,
   No. 1:20-cv-00363-LMB-MSN, 2020 WL 1955281 (E.D. Va. Apr. 8, 2020),
   *motion for injunction pending appeal denied*, No. 20-1419, ECF No. 14
   (4th Cir. Apr. 28, 2020) ................................................................................................3

*Turner Broadcasting System v. F.C.C.*,
   520 U.S. 180 (1997)......................................................................................................12

*Ungar v. N.Y.C. Housing Authority*,
   363 F. App'x 53 (2d Cir. 2010) ......................................................................................7

*United States v. Lee*,
   455 U.S. 252 (1982)......................................................................................................14

*United States v. O'Brien*,
   391 U.S. 367 (1968)...................................................................................................2, 12

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989)......................................................................................................12

*Whitlow v. California*,
   203 F. Supp. 3d 1079 (S.D. Cal. 2016)........................................................................9, 10

*Wisconsin v. Yoder*,
   406 U.S. 205 (1972)......................................................................................................8, 9

*Workman v. Mingo County Board of Education*,
   419 F. App'x 348 (4th Cir. 2011) ...................................................................................9

## Constitutions, Statutes, and Orders

U.S. Const. amend I ......................................................................................... *passim*

17 U.S.C. § 107 *et seq*.........................................................................................................6

42 U.S.C. § 2000bb(b) .......................................................................................................8

## Other Authorities

*Attorney General William P. Barr Issues Statement on Religious Practice and
   Social Distancing* (Apr. 14, 2020), https://bit.ly/2RIYzHO .................................6, 7

Hilda Flores, *One-third of COVID-19 cases in Sac County
   tied to church gatherings, officials say*, KCRA
   (Apr. 1, 2020, 2:55 PM), https://bit.ly/2XlCpPu .................................................16

Kathleen Foody, et al., *20,000: U.S. death toll overtakes Italy's as Midwest
   braces*, ASSOCIATED PRESS (updated Apr. 11, 2020, 3:09 PM),
   https://to.pbs.org/2z0hLup ...........................................................................1

CHRISTI A. GRIMM, U.S. DEP'T OF HEALTH & HUMAN SERVS.,
HOSPITAL EXPERIENCES RESPONDING TO THE COVID-19 PANDEMIC
(Apr. 2020), https://bit.ly/2VTEMIm ........................................................10

John D. Inazu, *The Forgotten Freedom of Assembly*,
84 TULANE L. REV. 565 (2010).........................................................11

Rong-Gong Lin II, et al., *Social distancing may have helped California slow the
virus and avoid New York's fate*, L.A TIMES (Mar. 31, 2020, 5:00 AM),
https://lat.ms/2VSbYih.........................................................................1

Bailey Loosemore & Mandy McLaren, *Kentucky county
'hit really, really hard' by church revival that spread
deadly COVID-19*, LOUISVILLE COURIER JOURNAL
(updated Apr. 2, 2020 9:24 AM), https://bit.ly/2XkKCnd ....................16

Richard Read, *A choir decided to go ahead with rehearsal;
Now dozens of members have COVID-19 and two are dead*,
L.A. TIMES (Mar. 29, 2020), https://lat.ms/2yiLbU6............................16

Joe Severino, *COVID-19 tore through a black Baptist church community in WV;
Nobody said a word about it*, CHARLESTON GAZETTE-MAIL,
https://bit.ly/2SFVYyX......................................................................16

*The State of Our State's Coronavirus Fight*, SEATTLE TIMES (Apr. 12, 2020),
https://bit.ly/2KtMqTq.........................................................................1

Rebecca Tan, et al., *Known coronavirus deaths and cases in D.C., Maryland and
Virginia*, WASH. POST (updated May 5, 2020, 11:09 AM),
https://wapo.st/2Sqc4wA ....................................................................1

**IDENTITY AND INTERESTS OF *AMICUS CURIAE***

Americans United for Separation of Church and State is a national, nonsectarian public-interest organization that is committed to preserving the constitutional principles of religious freedom and the separation of religion and government. Americans United has long fought to uphold the guarantees of the First Amendment's Religion Clauses that government must not favor, disfavor, or punish based on religion or belief, and therefore that religious accommodations must not license maltreatment of, or otherwise detrimentally affect, third parties.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

We are facing a pandemic. The United States now has the most reported COVID-19-related deaths worldwide (Kathleen Foody, et al., *20,000: U.S. death toll overtakes Italy's as Midwest braces*, ASSOCIATED PRESS (updated Apr. 11, 2020, 3:09 PM), https://to.pbs.org/2z0hLup), and the number in Virginia continues to climb (*see* Rebecca Tan, et al., *Known coronavirus deaths and cases in D.C., Maryland and Virginia*, WASH. POST (updated May 5, 2020, 11:09 AM), https://wapo.st/2Sqc4wA). Governor Northam has taken this threat seriously and acted decisively to save Virginians' lives. As part of his statewide public-health response, the Governor has temporarily barred all in-person gatherings that would put ten or more people in close proximity. Reports from other regions suggest that orders of this type have been successful in limiting transmission of COVID-19. *E.g.*, *The State of Our State's Coronavirus Fight*, SEATTLE TIMES (Apr. 12, 2020), https://bit.ly/2KtMqTq; Rong-Gong Lin II, et al., *Social distancing may have helped California slow the virus and avoid New York's fate*, L.A TIMES (Mar. 31, 2020, 5:00 AM), https://lat.ms/2VSbYih.

Though the Governor's order does temporarily limit Lighthouse Fellowship Church's ability to host large in-person religious gatherings, the church's religious-exercise rights have not been violated. The Supreme Court explained in *Employment Division v. Smith*, 494 U.S. 872

(1990), and *Church of the Lukumi Babalu Aye v. City of Hialeah*, 505 U.S. 520 (1993), that neutral, generally applicable laws reflecting no discriminatory intent toward religion do not violate the Free Exercise Clause of the First Amendment. Governor Northam's order complies with this principle: The virus is just as likely to spread at religious events as at nonreligious ones, so the order applies to all gatherings equally, regardless of motivation. And the order allows faith leaders and houses of worship to continue operating under constraints similar to those that apply to other permitted activities. But even if this Court were to conclude that heightened scrutiny should apply, the mass-gathering ban would still be valid because it is narrowly tailored to advance Virginia's compelling interest in protecting its residents from a deadly disease.

Nor have Lighthouse Fellowship's rights under the Free Speech or Assembly Clauses of the First Amendment been violated. The challenged order plainly regulates conduct rather than speech. To the extent that it burdens inherently expressive conduct, it triggers only intermediate scrutiny under *United States v. O'Brien*, 391 U.S. 367 (1968), and it easily satisfies that standard because it is content-neutral, advances an important governmental interest unrelated to the suppression of speech, and does not burden substantially more speech than necessary to advance that interest.

What is more, the Establishment Clause of the First Amendment forbids granting an exemption from the order for religious services. For if government imposes harms on third parties when it exempts religious exercise from the requirements of the law, it impermissibly favors the benefited religion and its adherents over the rights, interests, and beliefs of nonbeneficiaries. *See, e.g.*, *Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703, 709–10 (1985). Holding that religious gatherings must be exempted from the challenged order would do just that: A single contagious person at Lighthouse Fellowship could infect scores of fellow congregants, who could then expose family, friends, and countless others who did not attend the service.

For reasons similar to those set forth here, numerous courts have rejected challenges like this one to COVID-19-related orders in recent weeks, including a panel of the Fourth Circuit that rejected a *pro se* litigant's motion for injunction pending appeal without issuing an opinion. *See Tolle v. Northam*, No. 1:20-cv-00363-LMB-MSN, 2020 WL 1955281 (E.D. Va. Apr. 8, 2020) (reaffirming and explaining denial of preliminary injunction), *motion for injunction pending appeal denied*, No. 20-1419, ECF No. 14 (4th Cir. Apr. 28, 2020); *Legacy Church, Inc. v. Kunkel*, __ F. Supp. 3d __, No. 1:20-cv-327-JB-SCY, 2020 WL 1905586 (D.N.M. Apr. 17, 2020) (denying TRO in 100-page opinion); *Cross Culture Christian Ctr. v. Newsom*, __ F. Supp. 3d __, No. 2:20-cv-832-JAM-CKD, 2020 WL 2121111 (E.D. Cal. May 5, 2020) (denying TRO); *Roberts v. Neace*, __ F. Supp. 3d __, No. 2:20-cv-054, 2020 WL 2115358 (E.D. Ky. May 4, 2020) (denying preliminary injunction with respect to religious services), *appeal docketed*, No. 20-5465 (6th Cir. May 5, 2020); *Cassell v. Snyders*, __ F. Supp. 3d __, No. 20 C 50153, 2020 WL 2112374 (N.D. Ill. May 3, 2020) (denying TRO and preliminary injunction), *appeal docketed*, No. 20-1757 (7th Cir. May 6, 2020); *Gish v. Newsom*, No. 5:20-cv-755, 2020 WL 1979970 (C.D. Cal. Apr. 23, 2020) (denying TRO), *appeal docketed*, No. 20-55445 (9th Cir. Apr. 28, 2020); *Davis v. Berke*, No. 1:20-cv-98, 2020 WL 1970712 (E.D. Tenn. Apr. 17, 2020) (denying TRO); *Abiding Place Ministries v. Wooten*, No. 3:20-cv-00683-BAS-AHG, ECF No. 7 (S.D. Cal. Apr. 10, 2020) (denying TRO); *Nigen v. New York*, No. 1:20-cv-01576-EK-PK, 2020 WL 1950775 (E.D.N.Y. Mar. 29, 2020) (denying TRO); *Hughes v. Northam*, No. CL 20-415 (Va. Cir. Ct. Russell Cty. Apr. 14, 2020) (denying TRO); *Hotze v. Hidalgo*, No. 2020-22609 (Tex. Dist. Ct. Apr. 13, 2020) (denying TRO); *Binford v. Sununu*, No. 217-2020-CV-00152 (N.H. Super. Ct. Mar. 25, 2020) (denying preliminary injunction). And while the Sixth Circuit recently granted an injunction pending appeal allowing drive-in religious services, that court declined to extend the injunction to in-person services (*see Maryville Baptist Church, Inc. v. Beshear*, __ F.3d __, No. 20-5427, 2020 WL 2111316, at *5 (6th

Cir. May 2, 2020)), and drive-in services are not at issue here. The motion for an injunction pending appeal should be denied.

## ARGUMENT

**I.    THE ORDER DOES NOT VIOLATE THE FREE EXERCISE CLAUSE.**

### A.    The Order is Subject to Rational-Basis Review.

The freedom to worship in accordance with one's spiritual needs is a right of the highest order. And it is natural that, in difficult and scary times like these, people will seek the comfort and support that their faith community provides. But the constitutional guarantee of religious freedom has never provided absolute license to engage in conduct consistent with one's religious beliefs. *E.g.*, *Cantwell v. Connecticut*, 310 U.S. 296, 303–04 (1940). Yet Lighthouse Fellowship argues here that the Free Exercise Clause entitles it to an exemption from emergency and temporary public-health measures enacted by the Governor to combat a dangerous pandemic. That claim is wrong as a matter of law: "The right to practice religion freely does not include liberty to expose the community . . . to communicable disease." *Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944).

The Supreme Court's Free Exercise jurisprudence makes clear that while government cannot forbid a religious practice *because* it is religious, religion-based disagreement with the law does not excuse noncompliance. "To permit this would be to make the professed doctrines of religious belief superior to the law of the land," which would "in effect . . . permit every citizen to become a law unto himself." *Smith*, 494 U.S. at 879 (quoting *Reynolds v. United States*, 98 U.S. 145, 166–67 (1879)). Rather, the Court has held that laws that burden religious conduct are constitutionally permissible—and need satisfy rational-basis review only—when they are neutral toward religion and apply generally. *Lukumi*, 508 U.S. at 531; *Smith*, 494 U.S. at 879. Governor Northam's order here easily satisfies these requirements.

### 1. **The order is neutral toward religion.**

The neutrality requirement means that a law must not "infringe upon or restrict practices *because of* their religious motivation." *Lukumi*, 508 U.S. at 533 (emphasis added). That prohibition bars discrimination against religion both facially and through "religious gerrymanders" that target specific religious conduct. *Id.* at 534.

The order here evinces no hostility toward religion. It bans all mass gatherings, religious or not: No gatherings that would bring more than ten people together are allowed for any purpose. (ECF No. 1-4, ¶ 2.) The meaning of that facially neutral blanket prohibition is unchanged by the order's inclusion of religious gatherings in a non-exhaustive list of examples of types of prohibited gatherings; religious gatherings would fall within the order's scope regardless. And while the order permits people to leave their homes for only a limited set of purposes, one of the permitted purposes is traveling to and from places of worship. (ECF No. 1-4, ¶ 1.) So the order exhibits no special disfavor of religious activities.

### 2. **The order is generally applicable.**

General applicability is closely related to neutrality. *Lukumi*, 508 U.S. at 531. It means that government, "in pursuit of legitimate interests, cannot in a selective manner impose burdens only on conduct motivated by religious belief." *Id.* at 543. The Governor's order generally prohibits gatherings of more than ten people, and it specifically permits travel to places of worship while barring most other out-of-home activities. It therefore does not pursue Virginia's interests "only against conduct with a religious motivation" (*see id.* at 546) or "single[ ] out religious practices for discriminatory treatment" (*see Am. Life League, Inc. v. Reno*, 47 F.3d 642, 654 (4th Cir. 1995)).

That the order allows some essential businesses—such as hospitals and grocery stores—to continue to operate (ECF No. 1-4, ¶¶ 2, 7) does not negate its general applicability. While the order allows more than ten people to be present separately in such essential businesses, it does not permit

gatherings of more than ten people there. (*Id.* ¶ 2.) In any event, even if the order were to be construed as exempting essential businesses from the mass-gathering prohibition—which it does not—"[a]ll laws are selective to some extent" and need not be universal to be generally applicable. *See Lukumi*, 508 U.S. at 542–43. Copyright law, for example, contains several categorical exemptions (*see* 17 U.S.C. §§ 107–22), but no one understands those carveouts to create a constitutional right to an exemption for religiously motivated violations of copyright. Rather, the fundamental question is whether the scope of a law's coverage demonstrates animus toward religious conduct by subjecting it to burdens not placed on a significant swath of analogous nonreligious conduct. *See Lukumi*, 508 U.S. at 542–46 (explaining that city ordinances ostensibly aimed at protecting public health and preventing animal cruelty worked exclusively to bar Santeria religious animal sacrifice while leaving other animal slaughter unaffected). General applicability is undermined when government allows a significant amount of "nonreligious conduct that endangers [the asserted governmental] interests in a similar or greater degree" as the prohibited religious conduct. *Id.* at 543. Comparing similarly situated activities is thus key to sniffing out impermissible religious discrimination. *See id.*

The challenged order equally limits the size of analogous nonreligious gatherings, such as educational lectures, parties, social clubs, parades, and political conferences, to name a few. (*See* ECF No. 1-4.) Indeed, by allowing people to travel to places of worship for purposes that do not involve gatherings of more than ten people (ECF No. 1-4, ¶ 1(f)), the order treats religious gatherings and places of worship *more* favorably than both those similar nonreligious gatherings and many nonreligious places of assembly, including restaurant dining rooms, movie theaters, concert halls, and museums (*see* ECF No. 1-3, ¶¶ 3–4). *Cf. Attorney General William P. Barr Issues Statement on Religious Practice and Social Distancing* (Apr. 14, 2020), https://bit.ly

/2RIYzHO (urging that religious gatherings be treated like gatherings at movie theaters, restaurants, and concert halls).

Lighthouse Fellowship attempts to liken its gatherings to retail-store operations that are permitted by the Governor's order (*see* ECF No. 1-3, ¶ 5). But the order does not permit groups of more than ten people to congregate in retail stores. (*See* ECF No. 1-4, ¶ 2.) And it was reasonable for the Governor to conclude that briefly walking through a retail store poses a lesser public-health risk than sitting in a room with scores of people for an extended period. *See Legacy Church*, __ F. Supp. 3d __, 2020 WL 1905586, at *34. What is more, the permitted retail activities further Virginia's interest in safeguarding public health during the COVID-19 crisis. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1134–35 (9th Cir. 2009) (allowing activities that directly or indirectly further governmental interest at issue does not undermine general applicability). If in combating the virus the Governor were to close grocery stores, pharmacies, gas stations, banks, medical suppliers, laundromats, and similar services (*cf.* ECF No. 1-3, ¶ 5), the health crisis would be exacerbated. Medical professionals' ability to treat COVID-19 patients would be impaired without supplies and reliable transportation, and the entire medical system would suffer greater strain from additional illness and injury caused by the public's inability to eat, treat existing illnesses, and maintain sanitary living conditions. *See Legacy Church*, __ F. Supp. 3d __, 2020 WL 1905586, at *40.

In addition, the Governor's order draws no distinctions based on religious views or motivations with respect to permitted activities and locations—hospitals and food banks, for example, are not subject to the gathering ban whether or not they have a religious affiliation (ECF No. 1-4, ¶ 7). *Cf. Ungar v. N.Y.C. Hous. Auth.*, 363 F. App'x 53, 56 (2d Cir. 2010) (holding that limited categorical exceptions to public-housing policy did not negate general applicability

because exceptions were equally available to religious and nonreligious applicants). The order's scope therefore does not work any unconstitutional discrimination against religious activity.

### B.      The Order Would Satisfy Even A Compelling-Interest Test.

Even if this Court were to conclude that the Governor's order must for some reason satisfy heightened scrutiny,[1] Lighthouse Fellowship's claim would still fail. More than a century of constitutional jurisprudence demonstrates that neutral restrictions on religious exercise tailored to containing contagious diseases withstand even the strictest judicial scrutiny.

Before its decision in *Smith* in 1990, the Supreme Court interpreted the Free Exercise Clause to require application of a compelling-interest test whenever religious exercise was substantially burdened by governmental action. *See, e.g.*, *Sherbert v. Verner*, 374 U.S. 398, 407 (1963); *see also* 42 U.S.C. § 2000bb(b) (purpose of federal Religious Freedom Restoration Act was "to restore the compelling interest test as set forth in" *Sherbert* and *Wisconsin v. Yoder*, 406 U.S. 205 (1972)). The Court's pre-*Smith* free-exercise decisions made clear that the test, while exacting, is not "fatal in fact" (*Grutter v. Bollinger*, 539 U.S. 306, 326–27 (2003)). And those decisions routinely acknowledged that there is no right to religious exemptions from laws, like the order challenged here, that were tailored to shield the public from serious disease.

#### 1.      The order serves a compelling governmental interest.

Government has a compelling interest in protecting the health and safety of the public in general and in preventing the spread of communicable disease in particular. *See Sherbert*, 374 U.S. at 402–03; *accord Yoder*, 406 U.S. at 230 & n.20; *Am. Life League*, 47 F.3d at 655–56. "[P]owers on the subject of health and quarantine [have been] exercised by the states from the beginning."

---

[1] Lighthouse Fellowship argues that its claim under the Virginia Act for Religious Freedom requires heightened scrutiny and supports injunctive relief. (Mot. for TRO & Prelim. Injunction, at 19.) But that claim cannot support injunctive relief in federal court, because the Eleventh Amendment bars federal courts from enjoining state officials to comply with state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

*Compagnie Francaise de Navigation a Vapeur v. La. Bd. of Health*, 186 U.S. 380, 396–97 (1902). On that basis, the Supreme Court more than a century ago upheld a mandatory-vaccination law aimed at stopping the spread of smallpox. *See Jacobson v. Massachusetts*, 197 U.S. 11, 25 (1905). The Court straightforwardly rejected the idea that the Constitution barred compulsory measures to protect health, citing the "fundamental principle" that personal liberty is subject to restraint "in order to secure the . . . health . . . of the state." *Id.* at 26 (quoting *Hannibal & St. Joseph R.R. Co. v. Husen*, 95 U.S. 465, 471 (1877)). Because "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members," individual rights are subject to reasonable restrictions—especially during a public-health emergency such as the one that we now face. *See Jacobson*, 197 U.S. at 27.

The Supreme Court has thus repeatedly reaffirmed that public-health regulations that burden religious exercise withstand heightened judicial scrutiny. *See Sherbert*, 374 U.S. at 402–03 (citing mandatory vaccinations in *Jacobson* as example of burden on religion that satisfies compelling-interest test); *Yoder*, 406 U.S. at 230; *see also Prince*, 321 U.S. at 166–67. The Fourth Circuit has also consistently recognized that "the state's wish to prevent the spread of communicable diseases clearly constitutes a compelling interest." *Workman v. Mingo Cty. Bd. of Educ.,* 419 F. App'x 348, 353–54 (4th Cir. 2011); *accord McCormick v. Stalder*, 105 F.3d 1059, 1061 (4th Cir. 1997) ("[T]he prison's interest in preventing the spread of tuberculosis, a highly contagious and deadly disease, is compelling."); *see also Whitlow v. California*, 203 F. Supp. 3d 1079, 1089–90 (S.D. Cal. 2016) (collecting cases showing compelling governmental interest in fighting spread of contagious disease). Virginia's interest here in stanching the spread of COVID-19 is no less compelling.

### 2. *The order is narrowly tailored.*

The compelling-interest test requires that the challenged law be narrowly tailored to the interest at stake. *E.g.*, *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 (1982). Even "[a] complete ban can be narrowly tailored . . . if each activity within the proscription's scope is . . . appropriately targeted." *Frisby v. Schultz*, 487 U.S. 474, 487 (1988); *accord Roberts v. U.S. Jaycees*, 468 U.S. 609, 628–29 (1984) (ban on all gender discrimination is narrowly tailored to combatting evil of gender discrimination). Accordingly, the Supreme Court (*see Sherbert*, 374 U.S. at 403 (citing *Jacobson*, 197 U.S. at 26–27)) and many other courts (*see, e.g.*, *Whitlow*, 203 F. Supp. 3d at 1089–90 (collecting cases)) have concluded that blanket prohibitions on refusing immunizations satisfy a compelling-interest test.

Governor Northam's order operates in the same way. No vaccine for COVID-19 yet exists, and hospitals nationwide have experienced "severe shortages of testing supplies and extended waits for test results." *See* CHRISTI A. GRIMM, U.S. DEP'T OF HEALTH & HUMAN SERVS., HOSPITAL EXPERIENCES RESPONDING TO THE COVID-19 PANDEMIC 3 (Apr. 2020), https://bit.ly/2VTEMIm. Because Virginia cannot know who is infected at any given time, the only way to slow the virus's spread is to temporarily restrict the size of in-person gatherings and enforce social-distancing guidelines in permitted activities. And the order is no broader than necessary to ensure that the targeted activities—physical gatherings that create opportunities for transmission of the virus—are curtailed. At the same time, the order is carefully tailored to restrict religious activities only as necessary to achieve that goal: Places of worship can remain open and people can seek spiritual fulfillment there, including through "drive-in" religious services (ECF No. 1-6), while many analogous nonreligious institutions and activities are shut down completely.

## II.    THE ORDER DOES NOT VIOLATE THE FREE SPEECH OR ASSEMBLY CLAUSES.

Lighthouse Fellowship's claims that the challenged order violates its First Amendment rights of speech and assembly fare no better than its free-exercise claim. The First Amendment freedoms of speech and assembly are "cognate rights" subject to the same protections. *Thomas v. Collins*, 323 U.S. 516, 530 (1945). Accordingly, the right to assemble has been subsumed under free-speech doctrine regarding expressive association. John D. Inazu, *The Forgotten Freedom of Assembly*, 84 TULANE L. REV. 565, 609–11 (2010).

The First Amendment's protections for free expression do not prohibit government from regulating conduct in a way that incidentally burdens expressive activity. *See Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 62 (2006). Thus, it "has never been deemed an abridgement of freedom of speech . . . to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of [speech]." *Id.* (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949)). By temporarily limiting the size of all in-person gatherings, the Governor's order plainly regulates conduct rather than speech. All mass gatherings—social, civic, recreational, religious, and otherwise—are subject to the same conduct-based limitation without regard to their purpose or the content of any expression that might be involved. *See* Part I.A, *supra*.

Lighthouse Fellowship argues that the mass-gathering ban is an illicit content-based speech regulation because certain retail operations, like pharmacies and grocery stores, are exempted. (Mot. for TRO & Prelim. Injunction, at 12–14.) But selling groceries, medicine, or hammers is not speech, and regulating businesses based on the types of goods that they sell therefore is not a content-based speech regulation.

Only if the Governor's order were interpreted to regulate "inherently expressive" conduct (*Rumsfeld*, 547 U.S. at 66) could it trigger intermediate scrutiny (*see Holder v. Humanitarian Law*

*Project*, 561 U.S. 1, 26–27 (2010); *O'Brien*, 391 U.S. at 377). Gathering with ten or more other people is not, however, inherently expressive. *See City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989) (holding that there is no generalized First Amendment right to associate with others); *Roberts*, 468 U.S. at 618 (association is expressive if done "for the purpose of engaging in those activities protected by the First Amendment").

But even if the challenged order were construed as regulating inherently expressive conduct, it would nonetheless pass constitutional muster. Under the applicable intermediate-scrutiny test, burdens on expressive conduct are upheld if they (1) are content-neutral, (2) advance important governmental interests unrelated to the suppression of speech, and (3) do not burden "substantially more speech than necessary" to further those interests. *Turner Broadcasting System v. F.C.C.*, 520 U.S. 180, 189 (1997) (citing *O'Brien*, 391 U.S. at 377). All three requirements are satisfied here.

First, the justification for the restriction on the size of gatherings—to fight a deadly virus by reducing person-to-person transmission—"ha[s] nothing to do with content." *See Boos v. Barry*, 485 U.S. 312, 320 (1988). The Governor's order applies to all gatherings regardless of their purpose; religious gatherings are covered not because they are religious (or because they include speech) but because they entail bringing people together in person. *See* Part I.A, *supra*.

Second, there can be no question that combating a deadly outbreak of a global pandemic is an important interest unrelated to the suppression of expression. Indeed, the Supreme Court has held that much less important interests satisfy intermediate scrutiny. *See, e.g.*, *Ward v. Rock Against Racism*, 491 U.S. 781, 796–97 (1989) (ensuring that bandshell events are both loud enough and not too loud); *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 296 (1984) (keeping public park clean and accessible); *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 806–07 (1984) (avoiding aesthetic visual clutter from signs and billboards).

Third, the Governor's order does not burden substantially more expressive conduct than necessary to advance Virginia's interest in slowing the spread of COVID-19. The order restricts large in-person gatherings precisely because they are most conducive to spreading the virus. *See* Part I.B.2, *supra*. In-person gatherings of ten or fewer people are not prohibited, nor are virtual gatherings or ones during which people remain in their vehicles.

III.    **THE ORDER DOES NOT VIOLATE THE ESTABLISHMENT CLAUSE, BUT GRANTING A RELIGIOUS EXEMPTION WOULD.**

The Establishment Clause of the First Amendment "mandates governmental neutrality between religion and religion, and between religion and nonreligion." *McCreary County v. ACLU of Ky.*, 545 U.S. 844, 860 (2005) (quoting *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)). Because the Governor's order treats religious gatherings similarly to analogous nonreligious gatherings, Lighthouse Fellowship is wrong in arguing that the order violates the Establishment Clause. Rather, *granting* Lighthouse Fellowship the religious exemption that it seeks would violate the Establishment Clause. For the neutrality requirement of the First Amendment's Religion Clauses forbids the government not just to target religion for worse treatment (*see* Part I.A, *supra*) but also to grant religious exemptions that would detrimentally affect nonbeneficiaries (*see Estate of Thornton*, 472 U.S. at 709–10).

The rights to believe, or not, and to practice one's faith, or not, are sacrosanct. But they do not extend to imposing the costs and burdens of one's beliefs on others. For when government purports to accommodate the religious exercise of some by shifting costs or burdens to others, it prefers the religion of the benefited over the rights, beliefs, and interests of nonbeneficiaries, in violation of the Establishment Clause. Exempting Lighthouse Fellowship from the Governor's order would contravene this settled constitutional rule.

*a.* In *Estate of Thornton*, for example, the U.S. Supreme Court invalidated a law requiring employers to accommodate Sabbatarians in all instances, because "the statute t[ook] no account of

the convenience or interests of the employer or those of other employees who do not observe a Sabbath." 472 U.S. at 709–10. The Court held that "unyielding weighting in favor of Sabbath observers over all other interests" has "a primary effect that impermissibly advances a particular religious practice," violating the Establishment Clause. *Id.* at 710. Similarly, in *Texas Monthly, Inc. v. Bullock*, the Court invalidated a sales-tax exemption for religious periodicals because, among other defects, it unconstitutionally "burden[ed] nonbeneficiaries" by making them pay "to offset the benefit bestowed on subscribers to religious publications." 489 U.S. 1, 18 n.8 (1989) (plurality opinion).

The Supreme Court's pre-*Smith* Free Exercise Clause jurisprudence is consistent, demonstrating that religious exemptions that harm others cannot be required even under a compelling-interest test. In *United States v. Lee*, the Court rejected an Amish employer's request for an exemption from paying social-security taxes because the exemption would have "operate[d] to impose the employer's religious faith on the employees." 455 U.S. 252, 261 (1982). In *Braunfeld v. Brown*, the Court declined to grant an exemption from Sunday-closing laws because it would have provided Jewish businesses with "an economic advantage over their competitors who must remain closed on that day." 366 U.S. 599, 608–09 (1961). And in *Prince*, the Court denied a request for an exemption from child-labor laws to allow a minor to distribute religious literature because of the danger that it would have posed to the child's welfare. 321 U.S. at 170. That is because "[r]eal liberty for all could not exist under the operation of a principle which recognizes the right of each individual person to use his own [liberty] . . . regardless of the injury that may be done to others." *Jacobson*, 197 U.S. at 26.

In short, a religious accommodation "must be measured so that it does not override other significant interests" (*Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005)) and must not "impose substantial burdens on nonbeneficiaries" (*Texas Monthly*, 489 U.S. at 18 n.8 (plurality opinion)).

When nonbeneficiaries would be unduly harmed, religious exemptions are forbidden. *Cutter*, 544 U.S. at 720; *Estate of Thornton*, 472 U.S. at 709–10.

*b.* In only one narrow set of circumstances (in two cases) has the U.S. Supreme Court ever upheld religious exemptions that materially burdened third parties—namely, when core Establishment and Free Exercise Clause protections for the ecclesiastical authority of religious institutions required the exemption. In *Hosanna-Tabor Lutheran Evangelical Church & School v. EEOC*, 565 U.S. 171, 194–95 (2012), the Court held that the Americans with Disabilities Act could not be enforced in a way that would interfere with a church's selection of its ministers. And in *Corporation of the Presiding Bishop v. Amos*, 483 U.S. 327, 339–40 (1987), the Court upheld, under Title VII's statutory religious exemption, a church's firing of an employee who was not in religious good standing. These exemptions did not amount to impermissible religious favoritism, and therefore were permissible under the Establishment Clause, because they directly implicated "church autonomy." *Real Alts., Inc. v. Sec'y Dep't of Health & Human Servs.*, 867 F.3d 338, 352 (3d Cir. 2017).

This case does not implicate that special protection for ecclesiastical authority because it does not present questions regarding internal matters such as hiring clergy or determining religious membership. Rather, it presents a far different question: whether there is a constitutional right to put countless people *outside* the church at greater risk of exposure to deadly disease.

*c.* Granting an exemption to Lighthouse Fellowship here would elevate its religious preferences over the health of the entire community. By holding religious gatherings, Lighthouse Fellowship would not only put its members in danger but also increase the risk of contagion for everyone with whom they come into contact, including children, the elderly, and others at the highest risk of severe illness.

Virginia is facing an unprecedented public-health emergency, and in response to this grave threat, Governor Northam has prohibited large gatherings and ordered Virginians to observe social-distancing guidelines during certain permitted activities (and to refrain from other activities). The Governor has determined that these steps will slow the spread of the virus and ultimately save lives.

If Virginia is instead forced to exempt religious gatherings, everyone will be in greater danger of contracting the virus. Religious gatherings are just as likely as any other gathering to spread COVID-19, and the examples are sadly piling up across the country. Officials in Sacramento County, California, for example, traced roughly a third of the county's first several hundred cases back to church gatherings. Hilda Flores, *One-third of COVID-19 cases in Sac County tied to church gatherings, officials say*, KCRA (Apr. 1, 2020, 2:55 PM), https://bit.ly/2XlCpPu. After a church-choir practice—at which members attempted to observe distancing and hygiene guidance—45 out of 60 attendees fell ill, and two tragically died. Richard Read, *A choir decided to go ahead with rehearsal; Now dozens of members have COVID-19 and two are dead*, L.A. TIMES (Mar. 29, 2020), https://lat.ms/2yiLbU6. A church event in Louisville was "linked to at least 28 cases . . . and two deaths." Bailey Loosemore & Mandy McLaren, *Kentucky county 'hit really, really hard' by church revival that spread deadly COVID-19*, LOUISVILLE COURIER JOURNAL (updated Apr. 2, 2020), https://bit.ly/2XkKCnd. And a church service in West Virginia led to a cluster of infections that devastated a small community. Joe Severino, *COVID-19 tore through a black Baptist church community in WV; Nobody said a word about it*, CHARLESTON GAZETTE-MAIL, https://bit.ly/2SFVYyX.

A single unwitting carrier at a Lighthouse Fellowship worship service could cause a ripple effect throughout the entire community: That one carrier might pass the virus to his neighbors in the pews, who might then return home and pass it to their family members, including people at

high risk of severe illness. If those infected family members then go to the doctor's office, or to the grocery store for milk, they may potentially expose others, who may then do the same to their families—and so on. And the more people who get sick, the more strain is placed on the hospital system, and the greater the chance that people die due to lack of healthcare resources. The Establishment Clause forbids the government to grant religious exemptions for conduct that threatens to harm so many.

## CONCLUSION

For the foregoing reasons, Lighthouse Fellowship's request for an injunction pending appeal should be denied.

Respectfully submitted,

<div style="display:flex; justify-content:space-between;">

RICHARD B. KATSKEE*
ALEX J. LUCHENITSER*
  *Americans United for Separation of
    Church and State*
  *1310 L Street NW, Suite 200*
  *Washington, DC 20005*
  *(202) 466-3234*
  *(202) 466-3353 (fax)*
  *luchenitser@au.org*

  *\* Pro hac vice motions submitted
  herewith.*

*/s/ Victor M. Glasberg*

VICTOR M. GLASBERG
  *VSB No. 16184*
  *Attorney for Amicus Curiae*
  *Victor M. Glasberg & Associates*
  *121 S. Columbus Street*
  *Alexandria, VA 22314*
  *(703) 684-1100*
  *(703) 684-1104 (fax)*
  *vmg@robinhoodesq.com*

</div>

Date:      May 7, 2020.

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2020, the foregoing brief was filed using the Court's

CM/ECF system, through which counsel for all parties will be served.

_/s/ Victor M. Glasberg_

VICTOR M. GLASBERG
_VSB No. 16184_
_Attorney for Amicus Curiae_
_Victor M. Glasberg & Associates_
_121 S. Columbus Street_
_Alexandria, VA 22314_
_(703) 684-1100_
_(703) 684-1104 (fax)_
_vmg@robinhoodesq.com_

18