UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

|  |  |
|---|---|
| LIGHTHOUSE FELLOWSHIP CHURCH, | |
| Plaintiff, | |
| v. | Civil No. 2:20cv204 |
| RALPH NORTHAM, in his official capacity as Governor of the Commonwealth of Virginia, | |
| Defendant. | |

## <u>ORDER</u>

Pending before the Court is an Emergency Motion for an Injunction Pending Appeal filed by Plaintiff.  Mot. for Injunction Pending Appeal, ECF No. 18 (hereinafter "IPA Mot.").  For the following reasons Plaintiff's Motion (ECF No. 18) is **DENIED**.  No hearing is required, because the facts and arguments are presented adequately in the briefing and the exhibits submitted by the parties.

## I.     BACKGROUND

On May 5, 2020, the Court denied Plaintiff's Emergency Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction because Plaintiff is unlikely to succeed on the merits of its claims, the balance of the equities tips against Plaintiff, and because preliminary injunctive relief is not in the public interest.  *See* Order, ECF No. 16.

Plaintiff subsequently filed a Notice of Appeal.  Notice of Appeal, ECF No. 17.  Plaintiff now moves for an injunction pending appeal, pursuant to Federal Rule of Civil Procedure 62(d)— providing that the Court may issue an injunction pending appeal while an appeal is pending from an order that refuses a preliminary injunction—and pursuant to Federal Rule of Appellate

1

Procedure 8(a)(1)(C)—providing that a party typically must move for an injunction pending appeal in the district court before moving for an injunction pending appeal in the court of appeals.   IPA Mot., ECF No. 18.

The Court has recited the background relevant to the Plaintiff's Motion for a TRO and Preliminary Injunction thoroughly and it need not be repeated here. *See* Order at 1–8, ECF No. 16. However, several subsequent developments in the Governor's Orders warrant acknowledgment.

On May 8, 2020, the Governor issued Executive Order 61, addressing "Phase One" of the Commonwealth's plan for easing the restrictions instituted by the previous Orders. *See* Executive Order 61 (May 8, 2020), https://www.governor.virginia.gov/media/governorvirginiagov/executive-actions/EO-61-and-Order-of-Public-Health-Emergency-Three---Phase-One-Easing-Of-Certain-Temporary-Restrictions-Due-To-Novel-Coronavirus-(COVID-19).pdf.   The Order amends Executive Order 55.  *Id.* at 10.   Under Executive Order 61, "[a]ll public and private in-person gatherings of more than 10 individuals [remain] prohibited." *Id.* at 7.   Nevertheless, religious gatherings are permitted if they are "limited to no more than 50% occupancy of the room or facility in which the religious services are conducted"; "[i]ndividuals attending religious services [are] at least six feet apart when seated and . . . practice proper physical distancing at all times," except that family members may be seated together; religious institutions "[m]ark seating in six-foot increments and in common areas where attendees may congregate"; no items are "passed to or between attendees[] who are not family"; all "items used to distribute food or beverages [are] disposable, used only once, and discarded"; "[a] thorough cleaning and disinfection of frequently contacted surfaces [is] conducted prior to and following any religious service"; and the institution "[p]ost[s] signage at the entrance that states that no one with a fever or symptoms of COVID-19 is permitted in the establishment" and "signage to provide public health reminders regarding social

distancing, gatherings, options for high risk individuals, and staying home if sick." *Id.* at 7–8.  The

Order also strongly encourages persons attending religious services to wear face coverings over

their nose and mouth at all times.  *Id.* at 7.

Restaurants and other similar venues, personal care and grooming services, farmers mar-

kets, fitness facilities, and "brick-and-mortar" businesses are also permitted to begin reopening if

they adhere to certain requirements, including limitations involving occupancy or only operating

in outdoor settings or utilizing face coverings and conducting frequent cleaning.  *Id.* at 2–6.

Other venues must remain closed, such as theaters, performing arts centers, concert venues,

museums, and other indoor entertainment centers, racetracks and historic horse racing facilities,

bowling alleys, skating rinks, arcades, amusement parks, trampoline parks, fairs, arts and crafts

facilities, aquariums, zoos, escape rooms, public and private social clubs, and other places of "in-

door public amusement."  *Id.*  Public beaches are to remain closed except for purposes of exercis-

ing and fishing.  *Id.* at 7.  Schools and institutions of higher learning will remain closed for the

remainder of the 2019–2020 school year.  *Id.* at 8.

Although Executive Order 61 went into effect at 12:00 a.m., Friday May 15, 2020, (*id.* at

10), its implementation is delayed in several localities within the Commonwealth.  In response to

requests from "local officials from the Counties of Arlington, Fairfax, Loudon, and Prince Wil-

liam, and the Cities of Alexandria, Fairfax, Falls Church, Manassas, Manassas Park, as well as the

Towns of Dumfries, Herndon, Leesburg, and Vienna," the Governor issued Executive Order 62,

delaying the amendments made by Executive Order 61 until 11:59 p.m. on May 28, 2020 in those

localities.  Executive Order 62 (May 12, 2020), https://www.governor.virginia.gov/media/gover-

norvirginiagov/executive-actions/EO-62-and-Order-of-Public-Health-Emergency-Four---Juris-

dictions-Temporarily-Delayed-From-Entering-Phase-One-in-Executive-Order-61-and-Permitted-

3

to-Remain-in-Phase-Zero-Northern-Virginia-Region.pdf.  The Order noted that the delay was ap-

propriate in light of the fact that "[t]he Northern Virginia Region is substantially higher than the

rest of the Commonwealth in percentage of positive tests for COVID-19."  *Id.*

The implementation of Executive Order 61 is also delayed until May 28, 2020 in "the City

of Richmond and the County of Accomack," where Plaintiff is located.  Amended Executive Order

62 (May 14, 2020), https://www.governor.virginia.gov/media/governorvirginiagov/executive-ac-

tions/EO-62-and-Order-of-Public-Health-Emergency-Four-AMENDED.pdf.  These localities

continue to see an increase in the number of positive cases of COVID-19, and Accomack County

has a disproportionate percentage of positive cases in the state.  *Id.* at 2.  "Local health officials

opine that the County of Accomack's total positive cases could increase by over 50% in a matter

of days."  *Id.*  Accordingly, the parties in this litigation are in the substantially same positions they

were in at the time that Plaintiff's Motion for a TRO and Preliminary Injunction was decided,

although circumstances are likely to change in a matter of weeks.[1]

Plaintiff's Motion for an Injunction Pending Appeal has been briefed by both parties.  *See*

IPA Mot., ECF No. 18; Resp. in Opp., ECF No. 36; Reply, ECF No. 39.  The United States has

filed a Statement in Support of Plaintiff.  Notice, ECF No. 20.  The Motion is now ripe for a

decision.

## II.    LEGAL STANDARDS

In deciding a motion for an injunction pending appeal under Federal Rule of Civil Proce-

dure 62, the Court must consider four factors: "(1) whether the applicant has made a strong show-

ing that it is likely to succeed on the merits [of the appeal]; (2) whether the applicant will be

---

[1]    Plaintiff has not yet addressed the impact of the Governor's new Orders on its existing
claims.

irreparably injured absent [an injunction pending appeal]; (3) whether issuance of [an injunction pending appeal] will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 871 F. Supp. 2d 513, 518 (E.D. Va. 2012) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

## III.    ANALYSIS

As the Court found previously in addressing Plaintiff's Motion for a TRO and a Preliminary Injunction, Plaintiff is unlikely to succeed on the merits of its constitutional claims and its state statutory claim, the balance of the equities tips against Plaintiff, and preliminary injunctive relief is not in the public interest. *See* Order, ECF No. 16. The same conclusions are compelled after evaluating Plaintiff's Motion for an Injunction Pending Appeal. The analysis and evaluation leading to those conclusions are adopted herein and need not be repeated extensively. *See id.* at 9–33.

Moreover, Plaintiff's Motion for an Injunction Pending Appeal also must be denied because sovereign immunity bars Plaintiff's claims against the Governor and because the doctrine of derivative abstention counsels this Court to abstain from granting Plaintiff the declaratory and injunctive relief it seeks. The analysis of these additional bases follows.

### A.    Sovereign Immunity

Defendant—the Governor of Virginia—is immune from the claims asserted in this Motion and in Plaintiff's previous Motion for a TRO and Preliminary Injunction. Accordingly, Plaintiff is unlikely to succeed on its claims against Defendant.

### i.    Federal Constitutional Claims

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced

or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This Amendment has been interpreted by the United States Supreme Court to mean that a state may not "be sued as defendant in any court in this country without [its] consent . . . ." *Hans v. Louisiana*, 134 U.S. 1, 17 (1890) (quoting *Cunningham v. R.R. Co.*, 109 U.S. 446, 451 (1883)).

In *Ex parte Young*, the Supreme Court clarified that "a suit against individuals, for the purpose of preventing them, as officers of a state, from *enforcing* an unconstitutional enactment, to the injury of the rights of the plaintiff, is not a suit against the state within the meaning of the [Eleventh] Amendment." 209 U.S. 123, 154 (1908) (emphasis added) (citation omitted).

> If the act which [a state officer] seeks to enforce [is] a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States.

*Id.* at 159–60.

However, "[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the *enforcement* of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Id.* at 157 (emphasis added). That the Governor is "the executive of the state" and is, "in a general sense, charged with the execution of all its laws," is insufficient to bring him within the *Ex parte Young* exception. *Id.* at 192. Although "[t]hat would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be raised by individuals," it would be inconsistent "with the fundamental principle that [states] cannot, without their assent, be brought into any court at the suit of private persons." *Id.*

The United States Court of Appeals for the Fourth Circuit has applied *Ex parte Young* in holding that "the governor's duty to uphold state law [is] not sufficient to impose the required 'special relation' to enforce the law so as to make him a proper defendant." *Wright v. North Carolina*, 787 F.3d 256, 262 (4th Cir. 2015) (citing *McBurney v. Cuccinelli*, 616 F.3d 393, 400–02 (4th Cir. 2010)); *see also Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001) ("[A]lthough Governor Gilmore is under a general duty to enforce the laws of Virginia by virtue of his position as the top official of the state's executive branch, he lacks a specific duty to enforce the challenged statutes . . . .  The fact that he has publicly endorsed and defended the challenged statutes does not alter our analysis."); *see also Allen v. Cooper*, 895 F.3d 337, 355 (4th Cir. 2018) (noting "that a governor cannot be enjoined by virtue of his general duty to enforce the laws"). Something more is required. *See, e.g.*, *Bostic v. Schaefer*, 760 F.3d 352, 371 n.3 (4th Cir. 2014) (holding that a State circuit court clerk has sufficient enforcement authority to create an *Ex parte Young* exception because the clerk was responsible for granting and denying applications for marriage licenses).

"The purpose of allowing suit against state officials to enjoin their enforcement of an unconstitutional statute is not aided by enjoining the actions of a state official not directly involved in enforcing the subject statute." *Waste Mgmt.,* 252 F.3d at 331.  Accordingly, the Governor may be subject to suit under *Ex parte Young* only if: (1) there is a special connection between the Governor and the enforcement of challenged policy that goes beyond his general duty under the Virginia Constitution to enforce the laws of the Commonwealth; and (2) the Governor has acted or threatened to enforce the policy. *See McBurney*, 616 F.3d at 399, 402.  Plaintiff has failed to show that the Governor is subject to suit under either factor.

Plaintiff argues that the Governor has a special connection to the enforcement of the Governor's Orders because the Virginia Constitution and Virginia Code provide him with special enforcement authority during times of emergency.  Plaintiff references specifically Article V, § 7 of the Virginia Constitution.  Reply at 5, ECF No. 39.  This Article provides that "[t]he Governor shall . . . enforce the execution of the laws."[2]  But this is the general enforcement power that the Fourth Circuit has found insufficient by itself to subject the Governor to an *Ex parte Young* exception.  *Waste Mgmt.*, 252 F.3d at 331 (finding that the Virginia Governor's general duty to enforce the laws is insufficient to abrogate Eleventh Amendment immunity).

Plaintiff's reliance on Virginia Code § 44-146.17 also fails.  *See* Reply at 5–6, ECF No. 39.  This provision authorizes the Governor to issue executive orders that have the force and effect of law in response to an emergency.  Va. Code § 44-146.17 (stating that the Governor has the power in an emergency "[t]o proclaim and publish such rules and regulations and to issue such orders as may, in his judgment, be necessary to accomplish the purposes of this chapters," and that such "[e]xecutive orders . . . shall have the force and effect of law and the violation thereof shall be punishable as a Class 1 misdemeanor").  This statute does not provide the Governor with any special authority to *enforce* the executive orders that he issues in response to an emergency.  Instead, the statute allows the Governor to *create* law in an emergency.  "The power to promulgate law is not the power to enforce it."  *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020).  The *Ex parte*

---

[2]     Plaintiff misconstrues this provision in its Reply.  Plaintiff contends that this provision states that "'[t]he Governor . . . shall have the power . . . to enforce the execution of the laws' *during times of emergency*."  Reply at 5, ECF No. 39 (emphasis added) (quoting Va. Const. art. V, § 7).  But the provision makes no reference to "times of emergency."  The only reference to emergencies in Article V relates to who will serve as Governor if there is a vacancy in a time of emergency and the House of Delegates is unable to convene, and to the General Assembly's power to "provide by law for the waiver of the eligibility requirements for the Attorney General, Speaker of the House, or acting Speaker to serve as Governor in the event of an emergency . . . ."  Va. Const. art. V, § 16.

*Young* exception turns on who has the *prospective* authority to *enforce* the law, not on who had *retrospective* authority to *create* the law.

The same section of the Virginia Code provides that the enforcement authority for the Governor's Orders rests elsewhere. Under Virginia Code § 44-147.16, violations of the Governor's Orders are punishable as Class 1 misdemeanors. The Virginia Code establishes that the prosecution of misdemeanor offenses resides within the discretion of Commonwealth's Attorney. Va. Code § 15.2-1627(B) (providing that the Commonwealth's Attorney "shall be a part of the department of law enforcement of the county or city in which he is elected or appointed, and shall have the duties and powers imposed upon him by general law, including the duty of prosecuting . . . Class 1 . . . misdemeanors"). The Governor lacks the special enforcement authority required to subject him to this lawsuit under the *Ex parte Young* exception.

Furthermore, even assuming *arguendo* that the Governor has some special enforcement authority beyond his general duty to enforce the law of the Commonwealth, the Court "cannot apply *Ex parte Young* because [the Governor] has not acted or threatened to act." *McBurney*, 616 F.3d at 402. Plaintiff has not alleged that the Governor specifically directed the enforcement of his Orders against it or any other individual or entity, nor has it presented evidence that the Governor "participated in the decisionmaking process" of state and local law enforcement agencies regarding the enforcement of the Governor's Orders. *Id.* at 401–02 (finding that the Attorney General had not "acted or threatened to act" to enforce a statute where he had "neither personally denied any of the Appellants' . . . requests [under the statute] nor advised any other agencies to do so," and where the Appellants had not "allege[d] that the Deputy Commissioner or County Director relied on the Attorney General's advice in denying their . . . requests" under the statute). Because there is no evidence that the Governor himself "enforced, threatened to enforce, or advised other

agencies to enforce" his Orders against Plaintiff or any other individual or entity, "the *Ex parte Young* fiction cannot apply." *Id.* at 402.

The Court does not question whether Plaintiff's Complaint "falls within the doctrine of *Ex parte Young* permitting suits against state officials for prospective relief from ongoing violations of federal law." *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 332 (4th Cir. 2008).  But that does not relieve Plaintiff of the obligation to name the proper state official(s) as the proper defendant(s) in such suits seeking prospective relief from the enforcement of an allegedly unconstitutional statute.  Plaintiff has not done so here, and so is unlikely to succeed on the merits of its constitutional claims against the Governor.

ii.    State Statutory Claim

The *Ex parte Young* exception does not apply to claims in federal court against state officers for violations of state law.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).  Suits against state officers for violations of state laws are absolutely barred by Eleventh Amendment immunity.  *Id.*  The Supreme Court has reasoned that

> when a plaintiff alleges that a state official has violated *state* law[,] . . . the entire basis for the [*Ex parte Young* exception to sovereign immunity] disappears.  A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law.  On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.  Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

*Id.* (emphasis in original).

Nevertheless, a state "may waive its Eleventh Amendment immunity by consenting to be sued in federal court."  *Litman v. George Mason Univ.*, 186 F.3d 544, 550 (4th Cir. 1999).  Such waiver can be found where a state "directly and affirmatively waive[s] its Eleventh Amendment immunity in a state statute or constitutional provision, as long as the provision explicitly specifies

10

the state's intention to subject itself to suit in federal court."  *Id.* (quotations and alterations omitted).

But this "test . . . is a stringent one.  Although a [s]tate's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment. . . .  '[A] [s]tate's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued.'"  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985) (emphasis in original) (quoting *Pennhurst*, 465 U.S. at 99) (citations omitted).  The state's intention to subject itself to suit in federal court must be "stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction."  *Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244, 250 (4th Cir. 2012) (quoting *Atascadero*, 473 U.S. at 240).

"[A] state does not waive its Eleventh Amendment immunity 'by consenting to suit in the courts of its own creation,' 'by stating its intention to sue and be sued, or even by authorizing suits in any court of competent jurisdiction.'"  *Lee-Thomas*, 666 F.3d at 251 (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999)).  "[I]n order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must" explicitly and unambiguously "specify the [s]tate's intention to subject itself to suit in *federal court*."  *Atascadero*, 473 U.S. at 241 (emphasis in original).

The express waiver may be made in a statute or constitutional provision, or by the highest court of the state interpreting the statute or constitutional provision.  *Lee-Thomas*, 666 F.3d at 251.  "[W]here the highest court of a state has construed a state statute [or constitutional provision] as intending to waive the state's immunity to suit in federal court, the state's intent is just as clear as

11

if the waiver were made explicit in the state statute [or constitutional provision]."  *Id.* (quotation omitted).

The Virginia Religious Freedom Act provides that "[a] person whose religious exercise has been burdened by government in violation of this section may assert that violation as a claim or defense in any judicial or administrative proceeding and may obtain declaratory and injunctive relief from a circuit court."  Va. Code § 57-2.02(D).  The statute also provides that "[t]he decision of the circuit court to grant or deny declaratory and injunctive relief may be appealed by petition to the Court of Appeals of Virginia."  Va. Code § 57-2.02(F).

This statute does not unambiguously express an intent by the Commonwealth to subject itself to suit for violations of this statute in federal court.  The phrase "any judicial or administrative proceeding" does not clearly express the Commonwealth's intent to subject itself to suit in federal court.  *See Lee-Thomas*, 666 F.3d at 251 (noting that the phrase "any court of competent jurisdiction" is insufficient to find that a state has waived Eleventh Amendment immunity).  Instead, by referencing the Virginia circuit courts and the Court of Appeals of Virginia, the statute demonstrates the Commonwealth's intent to waive immunity *only* in its own courts.

Plaintiff has failed to present any other state statute, constitutional provision, or Virginia Supreme Court case establishing that the Commonwealth waives immunity from suit in federal court for alleged violations of the Virginia Religious Freedom Act.  *See* Reply at 7 n.1, ECF No. 39 (stating that Plaintiff declines to respond at this stage to Defendant's argument on *Pennhurst* immunity).  It has failed to show any likelihood of success on the merits, because the Governor is likely immune from suit in federal court on this state statutory claim.

### B.    Abstention

Although the Court denied Plaintiff's Motion for a TRO and Preliminary Injunction on the grounds that Plaintiff had failed to show likelihood of success on the merits and because the public interest and balance of the equities disfavor a preliminary injunction, the Court now includes additional reasoning recognizing the impropriety of this Court ordering preliminary injunctive relief, injunctive relief pending appeal, and ultimately declaratory and permanent injunctive relief after considering the doctrine of derivative abstention.

"'Abstention from the exercise of federal jurisdiction is the exception, not the rule.'  As a general rule, 'federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.'"  *United States v. South Carolina*, 720 F.3d 518, 526 (4th Cir. 2013) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976); and *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)).  Nevertheless, "federal courts may not enjoin a pending state criminal prosecution, absent a clear showing that 'defense of the . . . prosecution will not assure adequate vindication of constitutional rights.'"  *Cinema Blue of Charlotte, Inc. v. Gilchrist*, 887 F.2d 49, 52 (4th Cir. 1989) (quoting *Younger v. Harris*, 401 U.S. 37, 48–49 (1971)).

Underlying this rule "is a broader rule of comity: namely, that federal courts should abstain from the decision of constitutional challenges to state action, however meritorious the complaint may be, 'whenever [the] federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests.'"  *Cinema Blue*, 887 F.2d at 52 (quoting *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 237–38 (1984)).  "*Younger v. Harris* and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Colonial First Props., LLC v. Henrico Cty.*, 236 F. Supp. 2d

588, 596 (E.D. Va. 2002) (quoting *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982)).

Although consideration of *Younger* abstention generally arises in the context of a federal plaintiff who is itself enmeshed in state proceedings, there "may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them," even if the federal plaintiff is not a party to the state proceedings. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928 (1975). Where a federal plaintiff has "a substantial stake in the state proceedings" or has interests that are "intertwined" with the interests of a party to the state proceedings, abstention—sometimes referred to as derivative abstention—may be appropriate. *Hicks v. Miranda*, 422 U.S. 332, 348–39 (1975). Under such circumstances, "[t]he same comity considerations" underlying *Younger* "[p]lainly . . . apply . . . ." *Id.* at 349.

In accordance with the foregoing considerations, *Younger* abstention applies "when the requested relief would interfere with (1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding," which involves the plaintiff or a party whose interests are significantly intertwined with the interests of the plaintiff; "that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff"—or the party to the state proceeding whose interests are intertwined with the plaintiff's interests—to "raise the federal constitutional claim[s] advanced in the federal lawsuit." *South Carolina*, 720 F.3d at 527 (quotation omitted).

Here, a state judicial proceeding involving Kevin Wilson, the Pastor of Lighthouse Fellowship Church, was instituted before Plaintiff filed this federal lawsuit. *See* Va. Uniform Summons, Ex. F to Verified Compl., ECF No. 1-7; Verified Compl. at 2–3, ECF No. 1. The criminal

summons was issued to Pastor Wilson after he held a service at Lighthouse Fellowship Church. Verified Compl. at 2–3, ECF No. 1.  "Pastor Wilson's criminal prosecution is now pending in the General District Court for the County of Accomack in Virginia, Case No. G20002594-00."  *Id.* at 13.

The Verified Complaint is based on Pastor Wilson's verification and personal knowledge and refers to the charges against Pastor Wilson repeatedly.  *See id.* at 4, 12–14, 16–18, 20–21, 50. It emphasizes that individuals visiting essential businesses are "being permitted to enter such businesses [in numbers larger than ten] without threat of (or actual) criminal sanction *like that imposed on Lighthouse's Pastor Wilson*."  *Id.* at 15–16 (emphasis added); *see also id.* at 18 ("[A]t around the same time *as Lighthouse's Pastor Wilson was being subjected to criminal penalties* for his 'religious' gathering of more than 10 people, local businesses deemed 'essential' were permitted to accommodate customers [who] were not engaging in the same social distancing protocols . . . ." (emphasis added)).  Plaintiff frames its injury in large part based upon the injury inflicted upon Pastor Wilson by the criminal summons.  *Id.* at 20–21 ("Lighthouse has been explicitly targeted, singled out, and *punished* for participating in an in-person religious gathering . . . .  Lighthouse has suffered and is suffering irreparable injury *by having its Pastor criminally sanctioned* . . . ." (emphasis added)).  Just as the interests of a theater and its employees are intertwined regarding the seizure of the theater's explicit films and the prosecution of the theater's employees for showing those films (*see Hicks*, 422 U.S. at 348–49), so too is there an intertwining of the interests of a church and its pastor regarding restrictions on a church's ability to host large religious worship services and the criminal prosecution of the church's pastor for holding a large religious worship service.

15

The relief sought by Plaintiff "works the sort of practical interference with an ongoing state criminal proceeding that *Younger* counsels against." *Cinema Blue*, 887 F.2d at 53. Were this Court to rule in Plaintiff's favor on the merits, "its practical effect [would be] to raise the specter of a federal pre-judgment" that the prosecution of Pastor Wilson is unconstitutional, which then "must be taken into account" by the state court presiding over Pastor Wilson's case. *Id.*; *see also Hill v. Courter*, 344 F. Supp. 2d 484, 493 (E.D. Va. 2004) (noting that counsel for the plaintiff "conceded . . . that were [the plaintiff] to succeed in federal court on such a claim, he would seek to use the favorable federal judgment to persuade the state court to adopt similar reasoning"). Plaintiff appears to have been motivated to file this federal lawsuit *because* its Pastor was issued a criminal summons. *See* Reply at 15–16 (arguing that Pastor Wilson's inability to "bring his own claims at this time because the Commonwealth has ongoing criminal proceedings against him" is a hindrance that should permit Plaintiff to bring these claims *on his behalf* under the theory of associational standing). This is "the kind of interference that *Younger v. Harris* . . . and related cases sought to prevent." *Cinema Blue*, 887 F.2d at 53 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974)).

The remaining *Younger* factors are satisfied. There is no doubt that important state interests are implicated because the Commonwealth has implemented the challenged Orders in response to a deadly pandemic. *See Colonial First Props., LLC v. Henrico Cty.*, 166 F. Supp. 2d 1070, 1081 n.5 (E.D. Va. 2001) (noting that important states interests are implicated where a challenged law or ordinance "furthers a substantial government interest" and is designed "to provide for the public health, safety, and morals").

And the party to the state proceeding—whose interests are substantially intertwined with those of Plaintiff—has an adequate opportunity to raise the identical constitutional claims in the

state proceeding.[3]  "[S]tate courts often are called upon to decide emotionally charged, politically sensitive issues, most of which involve serious consequences. . . .  [And] nothing . . . suggests that the constitutional issues will receive [anything] other than a full and fair hearing by an unbiased judicial officer" presiding over the state proceedings.  *Id.* at 1083.  "[T]his Court [presumes] that state courts provide a forum where defendants may vindicate federal constitutional rights . . . .  Any denial of [a federal constitutional right] is obviously subject to challenge in the state courts by some appropriate device," and ultimately to constitutional review by the United States Supreme Court.  *Id.* (citing *Cinema Blue*, 887 F.2d at 54).

Plaintiff's possible inability to obtain the declaratory and injunctive relief it seeks in the state court proceedings does not preclude *Younger* abstention.  *Id.*  "*Younger* requires only that there be an opportunity to be heard on the constitutional challenges in a pending state proceeding."  *Id.*  This requirement is satisfied.  The conditions for abstention exist here, and the Court recognizes that it should abstain from issuing the declaratory and injunctive relief sought by Plaintiff unless one of the recognized *Younger* exceptions applies.

Where *Younger* applies, a federal court may nevertheless intervene with state proceedings "in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury cane be shown . . . ."  *Perez v. Ledesma*, 401 U.S. 82, 85 (1971).  "[T]he mere possibility of erroneous application of constitutional standards will usually not amount to the

---

[3]      The party to the state proceeding may also be able to bring the Virginia Religious Freedom Act Claim before the state court, which Plaintiff is likely prevented from asserting in federal court.  *See* Va. Code § 57-2.02(D) (providing that "[a] person whose religious exercise has been burdened by government in violation of this section may assert that violation as a claim or defense in any judicial or administrative proceeding and may obtain declaratory and injunctive relief from a circuit court . . . .").

irreparable injury necessary to justify" federal interference in state proceedings. *Dombrowski v. Pfister*, 380 U.S. 479, 484–85 (1965). Rather, "extraordinary circumstances" may exist "where the challenged statute is *flagrantly and patently* violative of express constitutional prohibitions in every clause, sentence and paragraph . . . ." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602 (1975) (emphasis added) (quotation omitted).

These exceptions are inapplicable here. There is no evidence that this prosecution was undertaken for the purpose of harassing Plaintiff or its Pastor, or that it has been undertaken without hope of obtaining a valid conviction. And, as recognized in this Court's previous Order on Plaintiff's Motion for a TRO and Preliminary Injunction, the Governor's Orders are not "flagrantly and patently violative of express constitutional prohibitions . . . ." *Id.*; *see* Order at 9–33, ECF No. 16. The Court cannot identify any other extraordinary circumstances calling for federal intervention at this time.[4] Therefore, the exceptions to *Younger* are inapplicable.

Plaintiff's Motion for a TRO and Preliminary Injunction was denied previously because it failed to show likelihood of success on the merits, that the balance of the equities tips in its favor, or that preliminary injunctive relief is in the public interest. Order at 9–33, ECF No. 16. The Court further acknowledges that a preliminary injunction is also inappropriate under *Younger* and its progeny. For these reasons, the motion seeking an injunction pending appeal must be denied.[5]

---

[4]     Although the existence of a pandemic might be considered extraordinary, it does not call for federal intervention in state proceedings. If anything, the once-in-a-century nature of a pandemic strengthens the important state interests that counsel against federal intervention.

[5]     Because the Court finds that abstention is warranted in this case, it will not rule on the issue of standing in deciding this Motion. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (noting that courts need not "decide whether the parties present an Article III case or controversy before abstaining under *Younger v. Harris*"). However, the Court notes that Plaintiff likely has direct standing to sue.

        "When a preliminary injunction is sought, a plaintiff's burden to demonstrate standing 'will normally be no less than that required on a motion for summary judgment.'" *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 907 n.8

(1990) (Blackmun, J. dissenting)).  The plaintiff "must 'set forth by affidavit or other evidence specific facts, which for purposes of the preliminary injunction will be taken to be true.'"  *Aziz v. Trump*, 234 F. Supp. 3d 724, 733 (E.D. Va. 2017) (quoting *Cacchillo*, 638 F.3d at 404) (alterations omitted).

Defendant argues that Plaintiff has failed to submit any competent evidence establishing direct or associational standing.  Resp. in Opp. at 14–15, ECF No. 39.  Defendant is incorrect. "[A] *verified* complaint is the equivalent of an opposing affidavit for . . . purposes [of a preliminary injunction], when the allegations contained therein are based on personal knowledge." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (emphasis in original).  The Complaint filed in this case is a Verified Complaint based on the personal knowledge of Kevin Wilson, the Pastor of Lighthouse Fellowship.  *See* Verified Compl. at 50, ECF No. 1.  The Court has competent evidence to consult in determining whether Plaintiff has established standing to sue.

In determining whether an institutional or organizational plaintiff has direct standing to sue, "a court conducts the same inquiry as in the case of an individual . . . ." *Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1250 (4th Cir. 1991).  The Court evaluates whether the plaintiff has established injury, traceability, and redressability.  *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013).

The United States Supreme Court has "recognized that First Amendment protection extends to corporations." *Citizens United v. Fed. Election Com'n*, 558 U.S. 310, 342 (2010) (collecting cases).  And the Supreme Court has at least implied that non-profit corporations have free exercise rights under the First Amendment.  *See Burwell v. Hobby Lobby*, 573 U.S. 682, 707– 08 (2014) (noting that "protecting the free-exercise rights of corporations . . . protects the religious liberty of humans who own and control those companies" and remarking that the Supreme Court has entertained First Amendment challenges brought by non-profit corporations) (citing *Hosana-Tabor Evangelical Lutheran Church and Sch. v. EEOC*, 565 U.S. 171 (2012); and *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993)).

Plaintiff asserts in its Verified Complaint that it has "sincerely held religious beliefs . . . that followers of Jesus Christ are not to forsake the assembling of themselves together, and that they are to do so even more in times of peril and crisis."  Verified Compl. at 23, ECF No. 1.  Plaintiff further asserts that because of the Governor's Orders, it "has been forced to self-censor, cease its religious worship services, and violate its sincerely held religious beliefs." *Id.* at 21.

To the extent that the Governor's Orders impact Plaintiff's ability to assemble "followers of Jesus Christ," host religious worship services, and spread its religious message to followers, an injury in fact to the First Amendment rights as asserted by Plaintiff appears to be sufficiently presented for purposes of Article III standing.  The alleged injury is traceable to the Governor's Orders, and would be redressed if the Governor's Orders were enjoined.  *See W. Mohegan Tribe and Nation of New York v. New York*, 246 F.3d 230, 233 (2d Cir. 2001) (finding injury in fact where Native American Tribe asserted that land use permitting requirement would "impact the Tribe's ability to perform its religious ceremonies" on land with religious significance).

In the event of future challenges to Plaintiff's standing, the Parties are REQUESTED to more fully address: (1) whether Plaintiff as an entity may assert First Amendment rights; and (2) whether Plaintiff can suffer injury to those rights sufficient for standing if it is not being subjected to criminal penalties.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's Emergency Motion for an Injunction Pending Appeal

(ECF No. 18) is **DENIED**.  The Clerk is **REQUESTED** to forward a copy of this Order to counsel

of record for all parties.

**IT IS SO ORDERED.**

_____
/s/
Arenda L. Wright Allen
United States District Judge

May 21, 2020
Norfolk, Virginia